790 So.2d 734 (2001)
John JOHNSON, Individually and as a Representative of the Class of Those Similarly Situated
v.
ORLEANS PARISH SCHOOL BOARD, XYZ Insurance Company, City of New Orleans, and ABC Insurance Company.
Theresa Berry and Phyllis Smith
v.
The City of New Orleans, The Orleans Parish School Board, and Housing Authority of New Orleans.
Lizette Gaines, Viola Allen, Barbara Stevens, Iris Myers, Nathan Parker and all Those Similarly Situated
v.
City of New Orleans, et al.
Fannie Johnson, et al.
v.
The City Of New Orleans and The Housing Authority of New Orleans.
Nos. 2000-CA-0825 to 2000-CA-0828.
Court of Appeal of Louisiana, Fourth Circuit.
June 27, 2001.
*737 Stephen B. Murray, Linda S. Harang, Suzette Peychaud-Bagneris, Murray Law Firm, and George J.G. Roux, and Joseph M. Bruno Bruno & Bruno, New Orleans, La., Attorneys for Plaintiffs/Appellees.
George F. Riess, Robert M. Rosenberg, Joseph T. Puhekker, Polack, Rosenberg, Endom & Riess, L.L.P., New Orleans, La., Attorneys for Orleans Parish School Board.
James W. Hailey, Jr., Claude A. Greco, Hailey, McNamara, Hall, Larmann & Papale, Metairie, La., Attorneys for Southern American Insurance Company/ Louisiana Insurance Guaranty Association.
Roy J. Rodney, Jr., John K. Etter, Rodney, Bordenave, Boykin & Ehret, and Henry P. Julien, Jr., Julien & Julien, New Orleans, La., Attorneys for Housing Authority of New Orleans.
Andrew L. Plauche', Jr., Wendy K. Lappenga, Plauche', Maselli, Landry & Parkerson, New Orleans, La., and Edward Ruberry, Bollinger, Ruberry & Garvey Chicago, IL, Attorneys for U.S. Fire Insurance Company.
Sidney Jay Hardy, Campbell, McCranie, Sistrunk, Anzelmo & Hardy, Metairie, La., Attorney for Republic Insurance Company.
Gregory C. Weiss, Weiss & Eason, L.L.P., New Orleans, La., Attorney for City of New Orleans.
Marshall J. Simien, Jr., Lake Charles, LA, and Richard W. Bryan, Judith A. Selby, *738 Jackson & Campbell, Washington, DC, Attorneys for National Union Fire Insurance Company of Pittsburgh, PA.
Court composed of JOAN BERNARD ARMSTRONG, CHARLES R. JONES and JAMES F. McKAY, III, Judges.
JAMES F. McKAY, III, Judge.
The sole issue in this appeal is whether the trial court correctly granted the plaintiffs' motion to certify a class action involving all claims filed by the residents and former residents of the area of New Orleans, referred to as the "Agriculture Street Landfill", seeking the remedy of damages caused by the defendants. For the reasons that follow, we affirm the trial court's judgment certifying the class action.

FACTS AND PROCEDURE
The named plaintiffs in the John Johnson class or class action are all current or former residents of an area of New Orleans known as the "Agricultural Street Landfill", who allegedly suffered injury. The site consists of approximately 190 acres bounded on the north side by Higgins Boulevard, on the east side by Louisa Street, on the south side by Florida Avenue and on the west side by Almonaster Avenue and Peoples Avenue Canal. The site includes what is commonly referred to as the "Press Park" community, the "Gordon Plaza" development, the "Gordon Plaza Senior Citizens Apartment Complex" and Moton Elementary School.
In the original petition, the plaintiffs in the John Johnson class, are all persons who sustained damages through exposure to hazardous and toxic substances in the soil where these plaintiffs had been living, working, and playing since the early 1970's in the area of New Orleans known as the "Agriculture Street Landfill". The class representatives include Teresa Berry, Phyllis Smith, Lizette Gaines, Barbara Stevens, Iris Myers, Peggy Grandpre, Fannie Johnson, Don H. Lewis Sr., Fannie Johnson, Nathan Parker, and Viola Allen on behalf of her daughter Elshanna of which nine testified at trial. Their claims concern not only present illnesses but they also allege fear of future diseases and illnesses that they may yet develop as a result of their exposure to the contaminated soils in the area. Additionally, they seek medical monitoring damages. The plaintiffs further claim that the property in this area lost monetary value due the toxic and contaminated condition of the soil and seek damages for said damages for this diminution of property.
The named defendants in the action include the City of New Orleans (City), Housing Authority of New Orleans (HANO), The Orleans Parish School Board (School Board), and their insurers, National Union Fire Insurance Company of Pittsburgh, Pennsylvania, U.S. Fire Insurance Company, Republic Insurance Company, and South American Insurance Company/Louisiana Insurance Guaranty Association.
Following the class certification hearing, the trial court issued a judgment granting plaintiffs' request to certify the class. In its reasons for judgment the trial court detailed the pertinent facts in the case sub judice.
In the early 1900's the City of New Orleans operated the site as a landfill, collecting and transporting waste mounds, waste pits, waste lagoons and surface deposits, much of which is alleged to be toxic and/or hazardous. During the 1960's and 1970's, the City and (HANO) began a residential development project on the site of the landfill. In developing the former landfill site, the City and HANO granted contracts for the construction of the three *739 residential developments to various entities that are not parties to the instant suit.
In 1986, the U.S. Environment Protection Agency (EPA) began an investigation and a series of testing on the site, which, eventually, led to the placing of this site on the National Priorities List in 1994, as a "Superfund" site. The "Superfund" site is bounded, generally, on the north by Higgins Boulevard, the south by Florida Avenue and the Florida Avenue Canal, on the west by Almonaster Boulevard, and on the east by an irregular line which goes southward from Higgins Boulevard between Press and Montegut Streets, crossing through the Shirley Jefferson Community Center Playground, crossing Feliciana Street at the corner of Abundance Street, and ending on Industry Street midway between Feliciana and Clouet Streets.
The plaintiffs contend that the contractors hired by the City and HANO either failed to take proper corrective measures or negligently performed these tasks. The plaintiffs further allege that it was the duty of the City and HANO to ensure that the contractors they hired performed these duties thoroughly and accurately. It is for the alleged breach of this duty that the plaintiffs filed this lawsuit. The plaintiffs seek a judgment providing them with medical monitoring and remuneration for their economic losses. The plaintiffs stipulated that this suit has not been brought in an effort to make any claim for personal injury.
The trial court granted the motion to certify and defined what claims the plaintiffs may pursue.
1. Current and former residents who have lived on the site of the former landfill site, as described above, for at least twelve months prior to February 1, 1994;
2. Current and former business owners and their employees who have operated a business on the former landfill site, as described above, for at least twelve months prior to February 1, 1994;
3. Current residents who are the owners of record of their homes, or who are buying their homes but have not yet completed their payments; and
4. Former students and employees of Morton Elementary School who attended or worked at the school on the site of the former landfill fore at least twelve months or one full school year prior to February 1, 1994.
The trial court held that the named plaintiffs met all of the statutory requirements for class certification.
On appeal the School Board raises several issues concerning numerosity requirements for class action against the School Board; adequate representatives of the proposed class; "common character" among the class members with references to the Supreme Court's decision in Ford v. Murphy Oil U.S.A. Inc., 96-2913, 96-2917, 96-2929, (La.9/9/97), 703 So.2d 542; and creating a class action for purposes of judicial efficiency and as a superior procedural device. HANO and the City raise several issues concerning class certification, medical monitoring, the creation of geographical boundaries for the class, damages concerning diminution of immovable property value, and claims for emotional distress and fear of future illness. We now consider whether the trial court properly exercised its discretion in certifying a class in this case.

APPLICABLE LAW
The Louisiana Supreme Court has adopted the following definition of a "class action":
The class action is a nontraditional litigation procedure permitting a representative *740 with typical claims to sue or defend on behalf of, and stand in judgment for, a class of similarly situated persons when the question is one of common or general interest to persons so numerous as to make it impracticable to bring them all before the court.
Ford v. Murphy Oil Co., 96-2913, 96-2917, 96-2929, (La.9/9/97), 703 So.2d 542, 544, on rehearing, 96-2913, (La.10/10/97), 710 So.2d 235.
Pursuant to La. C.C.P. art. 591, the prerequisites necessary to maintain a class action suit in pertinent parts are as follows:
A. One or more members of a class may sue or be sued as representative parties on behalf of all, only if:
1. The class is so numerous that joinder of all members is impracticable.
2. There are questions of law or fact common to the class.
3. The claims or defenses of the representative parties are typical of the claims or defenses of the class.
4. The representative parties will fairly and adequately protect the interest of the class.
5. The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of conclusiveness of any judgment that may be rendered in the case.
At a hearing on class certification, the only issue to be considered by the court is whether the case is one in which the class action procedural device is appropriate. Andry v. Murphy Oil, U.S.A., Co., 97-0793, (La.App. 4 Cir. 4/1/98), 710 So.2d 1126, 1129. Thus, "the court is not concerned with whether the plaintiffs have stated a cause of action or the likelihood that they ultimately will prevail on the merits." Id., citing Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) and Miller v. Mackey International, Inc., 452 F.2d 424 (5th Cir. 1971).

DISCUSSION

Certification of class action
Under Louisiana law, a class action may be certified only if the numerosity, adequacy of representation, and commonality requirements are present. The initial burden is on the party seeking to maintain the class action to establish these elements. Cotton v. Gaylord Container, 96-1958, (La.App. 1 Cir. 3/27/97), 691 So.2d 760, 768. Conclusory allegations of a pleading alone are insufficient to establish the existence of a class. Id. In determining whether the elements have been established, the court may consider the pleadings, affidavits, depositions, briefs, exhibits and testimony presented at the certification hearing. Id. See. Livingston Parish Police Jury v. Acadiana Shipyards, Inc., 598 So.2d 1177, 1181.

Numerosity
According to La. C.C. P. art 591(A)(1), the first prerequisite for maintaining a class action is that the members of the class be so numerous that joinder is impracticable. This is sometimes called the "impracticality" or "numerosity" requirement. The numerosity requirement has been explained as follows:
This requirement reflects the basic function of the class action as a device for allowing a small number of persons to protect or enforce rights or claims for the benefit of many where it would be inequitable and impracticable to join every person sharing an interest in the rights or claims at issue in the suit.
*741 Kent A. Lambert "Certification of Class Action in Louisiana," 58 La. L.Rev. 1085, at 1114 (1998).
Generally, a class action is appropriate whenever the interested parties appear to be so numerous that separate suits would unduly burden the courts, and a class action would "clearly be more useful and judicially expedient than the other available procedures." Cotton, at 768.
The School Board argues that the trial court erred in finding that the numerosity requirement had been satisfied. They aver that the trial court erroneously based its findings on the number of potential plaintiffs, and not the number of aggrieved persons, which amounts to a legal insufficiency of the evidence.
The trial court cited the following support for its decision:
The EPA estimated that the population of the area to be around 1,137 people, all potential plaintiffs. Moreover, testimony elicited from Dr. Kenneth Ducote, an official of the Orleans Parish School Board, testified that between 800-900 students, all also potential plaintiffs, were taught at Moton Elementary School each year between 1987 and 1994.
Numerosity is not shown by mere allegations of a large number of potential claimants. The burden is on the plaintiff-mover to make a prima facie showing that a definable group of aggrieved persons exist, and that the class is so numerous that joinder is impractical. Conclusory allegations are not sufficient. Carr v. Houma Redi-Mix Concrete Co., 96-1548, (La.App. 1 Cir. 11/10/97), 705 So.2d 213, 214.
The School Board avers that the plaintiffs presented no evidence that a substantial number of Moton's students or employees were aggrieved by any action of the School Board. Aside from Elshanna Allen, the plaintiffs failed to point to one other parent, student, or employee claiming to be aggrieved. Hence, there exists no evidence of a definable group of aggrieved persons. In Cf. Pulver v. 1st Lake Properties, Inc., 96-248, (La.App. 5 Cir. 9/18/96), 681 So.2d 965, 969, our colleagues at the 5th Circuit affirmed the trial court's decision not to certify the class where only eight people came forward, even though the plaintiffs asserted that there were potentially 700 to 1,000 plaintiffs.
Contrarily, the plaintiffs argue that this prerequisite for maintaining the class certification has been satisfied. They argue that under Dumas v. Angus Chemical Co., 25,632, (La.App. 2 Cir. 3/30/94), 635 So.2d 446, no set number of plaintiffs is required in order to fulfill this requirement. In fact, difficulty in identifying the claimants is one of the factors that make joinder impracticable and a class action appropriate. Id. at 450. Furthermore, Dr. Kenneth Ducote, an employee of the Orleans Parish Public School System, testified that Moton Elementary School served between 800-900 students per year when it was housed on the campus that is within the area of the Agriculture Street Landfill site between 1987 and 1994. The number of children who attended the Morton School for at least a year is estimated to be about 1,400.
The trial court in its reasons for judgment included as one of the definable groups in the class as: "former students and employees of Moton Elementary School who attended or worked at the school on the site of the former landfill for at least twelve months or one full school year prior to February 1, 1994." The trial court found that the numerosity requirement of the class certification process was satisfied based on the probability that well over 1000 individual suits would be filed if *742 the class certification was denied. Elshana Allen is one of the class representatives that allegedly attended Moton Elementary during the requisite time defined by the trial court. The fact that she is the only plaintiff to come forward from the Moton School out of a potential of thousands is irrelevant to the certification of this class action. The plaintiffs presented sufficient evidence to prove the numerosity prerequisite for class certification. We find no error in the trial court's determination that the class satisfied the numerosity requirement for class certification.

Adequacy of representation
The second prerequisite for maintaining a class action is proof of adequate representation for the absent class members. This element requires that the proposed class representatives prove that their claims are "a cross-section of, or typical of, the claims of all class members." Andry, at 1130.
The trial court has held that this second requirement for maintaining the class action is the presence of adequate representation for the absent class members. The ten named plaintiffs all testified that they either live or lived within the boundaries of the "Superfund" site and all testified they suffered emotional distress, devaluation of their property value, and a fear of contracting harmful diseases.
The School Board argues that the trial court erred in finding that the plaintiffs presented evidence sufficient to satisfy their burden of proof that they were adequate representatives of the class. Their initial argument against the trial court's findings is based upon their contention that plaintiff's interest are antagonistic to the interest of the School Board, which is a potential class member as a business owner located on the landfill. They aver that they suffered a $5,000,000 loss for the construction of the Moton School, which is now inoperable. Hence, the School Board deserves relocation like anyone else. Therefore, the plaintiffs' continued reasons for this prosecution against the School Board show that the plaintiffs are unfit to represent a class.
Louisiana jurisprudence does not require a "Noah-like" tabulation of class representatives and claims. The plaintiffs are not required to produce two, or even one, of every kind of claim or of every person included in the class. The law only requires that the plaintiffs "typically" and "adequately" demonstrate that they represent a cross-section of the claims asserted on behalf of the class. Andry at 1131. Furthermore, Louisiana jurisprudence interpreting the Class Action Statute does not require that the class representatives exhibit all the different types of possible injuries; it requires only that the claims of the class representatives be "a cross-section of, or typical of, the claims of all class members." In Andry, this court stated as follows:
Defendants argue that the class representatives appointed by the trial court do not have claims typical of one another, and do not correspond to claims made by other witnesses who testified. We disagree. The petitions filed assert claims for fear, fright, anxiety, property damage, and inconvenience. A thorough review of the record convinces us that the claims of the persons specified as class representatives adequately represent a cross-section of the claims made. Each appointed representative was a resident, business owner, or both, within the geographical area designated by the trial court, and are similarly situated to other claimants. The claims asserted by the class representatives include claims for evacuation, inconvenience, mental anguish and suffering, fear, anxiety, emotional distress, and economic damages *743 for broken windows, removal of soot and debris, medical expenses, and business interruption. Although a claim by a particular class representative with regard to the exact damage claimed may not be typical, the class of damages asserted by each representative is. We, therefore, find nothing in the record to support the defendants' argument that the class representatives will not adequately represent the absent class members.
Andry at 1131 (citations omitted). See also Atkins v. Harcross Chemicals, Inc., 93-1904, (La.App. 4 Cir. 5/17/94), 638 So.2d 302, 305-306.
Implicit in the trial court's judgment and after a careful inspection of the entire record, the evidence is sufficient to meet the requirements for proving adequacy of representation. Accordingly, we find that the adequacy of representation requirement has been met and there is no error in the trial court's judgment.

Commonality
The third requirement for certification of a class action is that there be questions of law and fact common to the class. Billieson v. City Of New Orleans, 98-1232, (La.App. 4 Cir. 3/3/99), 729 So.2d 146, 157. Generally, the jurisprudence requires that the common questions predominate over the individual issues because "[c]lass actions are limited to cases in which it would achieve economics of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Scott v. American Tobacco Co., 98-0452, (La.App. 4 Cir. 11/4/98), 725 So.2d 10, 14.
The "common character" requirement is perhaps best explained by the following quote from the Louisiana Supreme Court's decision in McCastle v. Rollins Environmental Services, 456 So.2d 612 (La.1984), as follows:
Lawyers for a long time have perceived that some litigious situations affecting numerous persons "naturally" or "necessarily" call for unitary adjudication. Kaplan, Continuing Work of the Civil Committee: 1966 Amendments to the Federal Rules of Civil Procedure (I), 81 Harv.L.Rev. 356, 386 (1967). Modern practice starts with the well-agreed proposition that there is no basis for a class action unless the class is so numerous as to make individual joinder impracticable, questions of law or fact exist common to the class, and the representative parties are proper champions of the class. Kaplan, supra, at 387. Fed. Rule 23(a); La.C.C.P. arts. 591-92. But something else needs to be added to make for a "natural" or "proper" class action. Kaplan, supra, at 387.
Under Louisiana practice there must be a "common character" among the rights of the representatives and the absent members of the class in order to make for a proper class action. La.C.C.P. art. 591(1). This is not merely a reappearance of the common questions threshold requirement noted above. The requirement of a "common character" restricts the class action to those cases in which it would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results. Cf. Proposed Amendments to Rules of Civil Procedure for the United States District Courts, Rule 23, Advisory Committee's Note, 39 F.R.D. 69, 102-103. Its object is to identify the cases where a class action promises important advantages of economy of effort and uniformity of result without undue dilution of procedural safeguards for members of the class or for the opposing party. It *744 invites a close look at the case before it is accepted as a class action and even then requires that it be specially treated. Cf. Kaplan, supra, at 389-390.
When a "common character" of rights exists, a class action is superior to other available adjudicatory methods for the purpose of promoting the basic aims and goals of a procedural device: (1) effectuating substantive law; (2) judicial efficiency; and (3) individual fairness. State ex rel. Guste v. General Motors Corp., 370 So.2d 477, 488(La.1978); Williams v. State, 350 So.2d 131, 133-34 (La.1977); Stevens v. Board of Trustees of Police Pension Fund, 309 So.2d 144, 151, (La. 1975). Therefore, if the superiority of a class action is disputed, the trial court must inquire into the aspects of the case and decide whether the intertwined goals of effectuating substantive law, judicial efficiency, and individual fairness would be better served by some other procedural device.
Many class action related circumstances in a particular case may contribute toward or detract from the intertwined goals. Non-exhaustive lists of some of the factors, which may appear in any given case with varying degrees of intensity, are set forth by Federal Rule 23(b) and the Uniform Class Actions Act and have been suggested for use by this court. See Stevens, at 150-51. After identifying the listed factors and any relevant unlisted ones that may be present in the case, the trial court must evaluate, quantify, and weigh them to determine to what extent the class action would in each instance promote or detract from the goals of effectuating substantive law, judicial efficiency, and individual fairness. Upon arriving at an estimate of the class action's overall effectiveness in furthering the intertwined goals, the court must compare this estimate with its assessment of the effectiveness of other adjudicatory methods and decide whether the class action is the superior procedural device.
In determining whether a class action in a particular case will promote enforcement of legislative policy, fairness, and efficiency, the trial court must actively inquire into every aspect of the case and should not hesitate to require showings beyond the pleadings. Stevens, at 152. Once the threshold requirements have been met and a prima facia showing for a class action has been made, the court must assume primary responsibility for directing the inquiry because of the effects its decision may have upon substantive law, absentees, and the court system.
Thus, the "commonality" requirement involves a two-step inquiry: (1) a determination that common issues predominate over questions affecting only individual members, and (2) a determination that the class action procedure is superior to other procedural mechanisms. Lambert, 58 La. L.Rev. at 1119. See also Andry, at 1131. The second inquiry is necessary only where, as here, the superiority of the class action procedure is disputed. McCastle, at 617; Lailhengue v. Mobile Oil Company, 94-2114, (La.App. 4 Cir. 6/7/95), 657 So.2d 542, 547.
The School Board argues that the trial court erred in failing to apply Ford v. Murphy Oil, to the facts of this case. In Ford, plaintiffs sued four petrochemical plants, claiming physical and property damages as a result of the plants' emissions. The Supreme Court ruled that the suit could not properly be certified as a class because common questions did not predominate over individual issues. The School Board asserts that the instant matter reflects the problem that arose in Ford. Here the plaintiffs seek relocation, compensation for the decreased or lost value to their property and for other economic *745 losses, fear of contracting cancer or other dreaded diseases, compensation for emotional distress, and medical monitoring. These widely divergent types of damages are similar to those in Ford, where class certification was denied. Furthermore, they argue that in Ford, the Court determined that four years of tortious activity proved too complicated for class certification.
The School Board further asserts that the varied exposures and causes claimed by the plaintiffs render class certification improper. They mention by example the case of Elshanna Allen, who claims to have been harmed by attending Moton School and having lived on the landfill site. As a result, claims of combined exposures by the plaintiffs make it impossible to determine the causes and effects of every alleged exposure occasioned by every resident of the landfill site over an extended period of time. They conclude that this analysis does not even include an investigation into each persons' unique habits, exposure, length of exposure, medications, medical conditions, employment, and location of the residents that would be necessary to determine liability and damages. Furthermore, they aver that the plaintiffs' claims are not the result of a single accident or disaster, but are the result of exposure over a period of time. Therefore, no mass tort arose from a common cause or disaster.
Finally, in its most compelling argument, the School Board asserts that it is a plaintiff-class member and a defendant in this action, therefore, the School Board is faced with the irreconcilable and undesirable result of prosecuting an action against itself and defending an action from itself. In their argument, the School Board asserts that they are a business/property owner on the site, which has sustained a loss of at least $5,000,000 even thought the school has been deemed perfectly safe. They argue that there can be no uniformity of decision among similarly situated class members because the plaintiffs made the School Board, a class member, a defendant. They contend that their right to procedural fairness has been sacrificed and its ability to protect its interest has been severely compromised by the trial court's decision. This action results in confusion pursuant to La. C.C. art. 1903 which states "When the qualities of obligee and obligor are united in the same person, the obligation is extinguished by confusion." Consequently, the class action is not a superior method of adjudication. We disagree.
The fact that the School Board is both a defendant and plaintiff in the suit is not an uncommon situation. This situation often occurs in other common procedural vehicles such as cross-claims, reconventional demands and a myriad of other situations, which arise in the practice of law. It in no way thwarts the class certification as the superior procedural device. Furthermore, this is not the type of situation envisioned by La. R.S. art. 1903 that results in confusion. This argument is without merit.
HANO and the City of New Orleans argue that the trial court erred in finding commonality because the putative class representatives do not have common legal and factual issues. They urge that Ford v. Murphy Oil, controls arguing that the facts in the case sub judice are similar in that;
the nature of the claims would require each class member to prove different facts to establish that the defendants' liability, either individually or combined, caused them specific damage on specific dates. The case was further complicated by the "widely divergent types of personal property and business damages claimed and considering each plaintiffs' *746 unique habits, exposures, length of exposures, medications, medical conditions, employment, and location of residence or business."
Andry at 1131.
HANO and the City of New Orleans aver that the trial court erred in disregarding testimony at the class certification hearing that proved that even the claims of the putative class representatives do not have common legal and factual issues. They argue that due to the inherent complexity of the matter including the mixture of chemicals "soup", that there would have to be an individualized analysis of the unknown synergistic effects of the combination of alleged chemicals from various sources and then relate the effects, due to acts or omissions of the multiple parties involved, upon the individual plaintiffs. Hence, there would be too many individualized claims to be satisfied in a class action procedure, and a class action would be an improper vehicle for these individualized claims.
In Andry, this Court distinguished Ford, noting that Ford involved a class of plaintiffs, suing four different and distinct entities, claiming that the emissions and pollutants each entity released into the environment over a period of time had a synergistic, damage-causing impact on the community. In Ford, the Louisiana Supreme Court concluded that the nature of the claims would require that each class member prove different facts to establish that the defendants' liability, either individually or combined, caused the plaintiffs specific damages on specific dates. Widely divergent types of damages complicated that case. In contrast to Ford, in the instant matter there was only one source of the contaminates, the landfill. In some ways, this case is similar to the Louisiana Supreme Court's opinions in McCastle and Banks v. New York Life Ins. Co., 98-0551, (La.12/17/98), 722 So.2d 990.
This court established in McCastle v. Rollins Environmental Services of Louisiana, Inc., that situations involving multiple or long-term incidents do not preclude class certification. In McCastle, a class action was brought against the operator of a chemical waste disposal site. The plaintiffs alleged that the activities of the defendant between 1980 and 1981 caused them to suffer physical injuries. In McCastle, each plaintiff would be required to individually show that the defendant's conduct injured them in some way. However, this Court held that the plaintiffs met the "commonality" requirement because they were all injured by the same conduct. The fact that this conduct occurred during a period of one year, rather than involving one incident, did not preclude this Court from certifying the class.
The instant case is similar to McCastle as well. The class members in this case claim that they were all injured by the same conduct. Although they must prove individual injuries, they allege that their injuries were caused by the same "common" conduct. Therefore, the plaintiffs meet the commonality requirement of article 591(A)(2). For similar reasons as those expressed above, we find that the plaintiffs in this case have met the commonality requirement for asserting a class action. Moreover, concerning the issue of commonality, the trial court in McCastle, tacitly recognized that the plaintiffs presented issues, which were common to the entire class. In fact the trial court stated that it was persuaded that:
... whether the plaintiffs ultimately prevail or fail on their claims, if separate trials are ordered for each potential plaintiff the same fact witnesses, expert witnesses, exhibits, and trial preparation will be necessary for each individual trial *747 to prove or disprove the issues presented by the plaintiffs. The testimony provided to this court unequivocally established that these potential plaintiffs have been addressed as, acted as, and dealt with as a community, both by the Defendants and the witnesses they called to testify. It is clear, then, that the issues which face this potential class predominate over any potential individual questions which may arise.
McCastle at 618.
Furthermore, a determination of whether the class action procedure is the "superior procedural vehicle" under the circumstances of a given case depends upon consideration of whether the following three "intertwined goals" would be best served by use of a class action rather than some other procedural device: (1) effectuating substantive law, (2) judicial efficiency, and (3) individual fairness. McCastle, 456 So.2d at 616. That requirement was summarized by the Louisiana Supreme Court in Stevens as follows:
In determining how the legislature intended the courts to define and apply the concept of allowing a class action to enforce rights with a common character, we are mindful of the basic goals or aims of any procedural device: to implement the substantive law, and to implement that law in a manner which will provide maximum fairness to all parties with a minimum expenditure of judicial effort. Implicit, then, in decision that rights are of a common character is a consideration of the extent to which a clear legislative policy might be thwarted, or hampered in its implementation, by the lack of availability of the class action device.
But this does not end the inquiry. Fairness to the parties demands at the least that the relationship between the claims of members of the class should be examined to determine whether it would be unfair to the members of the class, or to the party opposing the class, to permit separate adjudication of the claims. In determining whether it would be unfair to require separate adjudications, for instance, the courts should consider the precedential value of the first decision, as well as the extent of injustice that will be produced by inconsistent judgments in separate actions. Another factor to be considered, for example, is the size of the claims of the absent members of the class, for the greater the claim, the greater the interest of its owner in prosecuting it in a separate action.
Stevens, at 151.
As in the McCastle case, a consideration of the pleadings in light of the appropriate pragmatic factors in this case "indicates that a class action is superior to other procedural methods available for the fair and efficient adjudication of the controversy and the effectuation of substantive law." Id. at 618. See also, this court's opinion in Lailhengue, supra.
One intertwining goal for determining whether a class action is the superior procedural method for determining a given controversy is judicial efficiency. When considering this goal, courts are to be mindful that "the achievement of economies of time, effort and expense" is a fundamental objective of a class action. McCastle, 456 So.2d at 619; Dumas, 25,632, 635 So.2d at 452. As mentioned in McCastle, the difficulties, which may be encountered in handling a class action in the instant case, do not outweigh the economies to be derived from unitary adjudication. McCastle at 620.
Moreover, the fact that resolution of class actions sometimes places added responsibilities and burden on the trial court actually hearing the case should not *748 be allowed to overcome the fact that a class action meeting all the requisites will "facilitate a prompt, efficient, and relatively inexpensive single trial on the common nucleus of issues" as compared to hearing the cases separately. McCastle, 456 So.2d at 620.
The trial court provided in its reasons for its judgment that the class action is a superior procedural mechanism available to these plaintiffs and that the goal of judicial efficiency is clearly met by this class certification. The trial court further determined that there was no prejudice to the defendants and that there was every advantage to all parties to try the case as a class action. After a review of the record in the instant matter, it is abundantly clear that the trial court's finding that the commonality prong had been satisfied, maximized the fundamental fairness to the parties and minimized the expenditures of judicial resources, which is the basic goal of the class action as a procedural device. Clearly, there is no error in the trial court's determination that the plaintiffs in the instant matter had met the commonality prong.
Finally, HANO argues the trial court erred in not considering the requirements for adjudication of medical monitoring under the "manifest injury" standard now required by La. C.C. art. 2315.
Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair.
Damages may include loss of consortium, service, and shall be recoverable by the same respective categories of persons who would have had a cause of action for wrongful death of an injured person. Damages do not include costs for future medical treatment, services, surveillance, or procedures of any kind unless such treatment, services, surveillance, or procedures are directly related to a manifest physical or mental injury or disease.
The legislature passed this element to art. 2315 by Acts 1999, No. 989 (House Bill 1784). The defendants interpret this change as the legislature's attempt to restrict the judicially-created availability of medical monitoring as an element of damages, explicitly narrowing the holding of Bourgeois v. A.P. Green Industries, Inc., 97-3188, (La.7/8/98), 716 So.2d 355, by requiring that the medical monitoring be "directly related to a physical or mental injury". In Bourgeois, the Supreme Court granted certiorari for the narrow issue to determine whether asymptomatic plaintiffs, who have had significant occupational exposure to asbestos and have incurred significance expenses for periodic medical examinations to monitor the effects of that exposure, have suffered "damage" under La. C.C. art. 2315. The Court went on to hold that the reasonable cost of medical monitoring is a compensable item for damages pursuant to La. C.C. art. 2315 provided they satisfy certain criteria. See, Bourgeois, at 360-361.
HANO argues that the relevant issue before this Court is whether the putative class representatives, under the relevant statutes and jurisprudence, can adequately represent a class, seeking establishment of a fund to provide medical monitoring, where none of them can satisfy the required elements for such a claim. They argue that the plaintiffs have stipulated that this suit has not been brought in an effort to make any claim for personal injuries. Furthermore, they assert that the plaintiffs provided no evidence that their present medical conditions were related to living in the Agriculture Street neighborhood and that no physician or other health care provider has ever linked any of the putative class representatives' illness to the neighborhood.
*749 Contrarily, plaintiffs argue that no one has yet conducted a comprehensive medical study of their conditions and that they are entitled to a trial to determine whether they meet the requirements for recovery set forth in Bourgeois.
In the instant matter, the defendants have failed to prove that the plaintiffs cannot prove any set of facts which could limit their relief. Moreover, the defendants are literally asking this Court to determine that the plaintiffs have no cause of action under any legal standard of recovery. This issue is clearly premature and after careful scrutiny of the entire record there is insufficient information and evidence for this Court to make such a determination. Only after a full trial on the merits will this issue be resolvable. Accordingly, we find no error in the trial court's failure to include the issue concerning medical monitoring in its reasons for judgment in the case sub judice.
The defendants' further argue that the trial court erred in its geographical boundary determination. The trial court designated the geographical area as the former landfill site, bounded on the north by Higgins Boulevard, on the east by Louisa Street, on the south by Florida Avenue, and on the west by Almonaster Avenue and Peoples Avenue Canal. The defendants claim that the eastern boundary at Louisa Street added 19 blocks beyond the EPA's "dotted line" boundary, and that the evidence in the record does not support this determination. They contend that this boundary line added numerous private residences, businesses, and churches to the potential class without any reliable evidence to support the extended boundary line.
The plaintiffs on the other hand claim that three sides of the boundaries are the same as those drawn by the EPA, and the extension of the eastern boundary to the west side of Louisa Street makes a more familiar and easily identifiable boundary. The EPA's boundary is only a suspected boundary of the former landfill site. This boundary may exclude persons who should be a part of the class.
Clearly, the trial court heard all of the witnesses and evidence and determined the appropriate boundaries. Based on the record before us we find no error in the trial court's determination of the geographical boundaries of this class action.
Finally, HANO argues that the trial court erred in certifying the plaintiffs' claims of diminution of immovable property values and in certifying the plaintiffs' emotional distress and fear of illness claims. They base their argument primarily on a lack of common character. They allege that the plaintiffs' diminution of property claims lack a common character due to numerous non-parties that were involved in the development of the neighborhood and the variety of legal relationships between the non-parties and the neighborhood residents. Furthermore, they argue that the plaintiffs' have disclaimed physical injuries and that their emotional distress and fear of future illness claims are inherently subjective and individualized, such that class adjudication is inappropriate and should not be allowed.
As we have previously determined above, the trial court did not err in determining that the prerequisites for a certification had been statutorily satisfied. These arguments presented by the defendants do not convince this Court to reverse the vast discretion of the trial court in the area of damages concerning either emotional distress or diminution of value for the plaintiffs' immovable property. A full trial on the merits is needed for an accurate determination of these issues.
*750 While we recognize that there will be some difficulty in managing litigation, we find that this does not outweigh the economies to be derived from a unitary adjudication. Accordingly, we find that the trial court did not abuse its discretion by granting the motion for class certification in this case because the plaintiffs presented sufficient record evidence to fulfill the statutory and jurisprudential requirements. The judgment is affirmed and the case is remanded for further proceedings consistent with this decision.
AFFIRMED.