ROLAND L. BELSOME, Judge.
| j Defendants, Harbor Homeowners’ Association, • Inc. (the “Association”) and its insurer, State Farm and Casualty Company (“State Farm”), appeal the trial court’s judgment granting the Motion to Confirm Class Certification filed by plaintiff, Wendy Duhon. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY

The Harbor View Condominium Complex in New Orleans sustained wind and water damages after Hurricanes Katrina and Rita. The Association, through its volunteer Board of Directors (the “Board”), ' manages the complex. The Board is composed of individual condominium owners.
On August 4, 2006, Ms. Duhon filed a class action lawsuit against the Association and other defendants alleging that the Association was at fault for various damages relating to the repair of the complex.[1] Specifically, Ms. Duhon claimed that the Association: (1) unlawfully entered individual condominium units without authorization, destroying and damaging their contents; (2) negligently 1 «Jailed to administer and supervise the rebuilding process, resulting in a delay in the repairs; (3) unlawfully increased the insurance deductible on the policy covering the complex without the required notice and approval from the condominium owners. Ms. Duhon later amended the suit to add State Farm, the Association’s insurer, as a defendant.
In 2007, Ms. Duhon filed two motions for class certification that were never heard. Accordingly, in 2013, she filed a motion to re-set the certification hearing, and the matter was heard on January 13, 2014. By judgment rendered on February 25, 2014, the trial court granted Ms. Duhon’s motion for class certification on two of the plaintiffs three claims: the Association’s breaches of duty regarding the delay in repair and increase of the' insurance deductible. Accordingly, the class was defined 'as follows: •
All condominium owners at the Harbor View Condominium complex ... who sustained injuries, loss and/or damages as a result of defendant’s action or inaction, and/or breaches of agreements or duties associated with 1) obtaining of hurricane insurance with less - than a 10% deductible and/or 2) the delays in completing the post-Hurricane Katrina repair work in and throughout the “Common Elements” (i.e. common areas) of the [complex].
The defendants appealed the certification of the class to this Court. See Duhon v. Harbor Homeowners’ Ass’n, Inc., 2014-0583 (La.App. 4 Cir. 2/4/15), 160 So.3d 1019. Prior to any decision on appeal, Ms. Duhon filed a motion to dismiss all of her claims against the Association that were not covered by insurance. Accordingly, this Court remanded the matter to the trial court to review the motion and “to *326 issue a new ruling on class certification, after determining what | ¡¡affect, if any, the motion ruling has on certifying the class.”[2] Id, p. 3, 160 So.3d at 1021.
On February 26, 2015, the court granted Ms. Duhon’s motion to voluntarily dismiss all uninsured claims. Thereafter, the court addressed the issue of class of class certification that had been remanded.[3] By judgment rendered May 29, 2015, the trial court, again, granted the motion for class certification. It is from this Judgment that the Association and State Farm appeal.

ASSIGNMENTS OF ERROR

1. The class certification was improper because:
a. The evidence presented fails to satisfy the requirements of numerosity, commonality, and typicality set forth in La. C.C.P. art. 591(A) as prerequisites to class certification;
b. The evidence presented fails to satisfy the requirement of adequacy of class certification, as set forth in La. C.C.P. art. 591(A), because Ms. Du-hon’s interests are antagonistic to and in conflict with other class members;
c.The evidence presented fails to satisfy the additional requirements for class certification set forth in La. C.C.P. art. 591(B)(3).

STANDARD OF REVIEW

The standard of review for a trial court’s ruling on a motion for class certification is tri-parte. When reviewing the certification of a class, a trial court’s Lfactual findings are subject to the manifest error standard or review; however, the ultimate decision of whether or not to certify the class is reviewed under an abuse of discretion. Doe v. S. Gyms. LLC, 2012-1566, p. 9 (La.3/19/13); 112 So.3d 822, 830. Finally, the question of whether the district court applied the correct legal standards in determining whether to certify the class is reviewed de novo. Husband v. Tenet Health Systems Medical Center, Inc., 2008-1257, p. 6, (La.App. 4 Cir. 8/12/09), 16 So.3d 1220, 1227.

DISCUSSION

The procedure for class certification is governed by Article 591 of the Louisiana Code of Civil Procedure.[4] Article 591 is *327 divided into two subsections: | fi591(A) and 591(B). Article 591(A) provides five prerequisites that must be met to qualify for class certification: (1) Numerosity; (2) Commonality; (3) Typicality; (4) Adequacy of Representation; and (5) Objectively Defined Class.. In addition to these five prerequisites, Article 591(B) lists three additional criteria, only one of which needs to be satisfied to certify a class. Ms. Duhon had the burden to prove that the requirements of Article 591(A) were satisfied. Doe, p. 9, 112 So.3d at 830. Appellants argue that the trial court erred in finding that Ms. Duhon proved four of the five criteria listed in Article 591(A), namely: numerosity, commonality, typicality, and adequacy of representation. Appellants further find error in the court’s determination that Article 591(B)(3) was satisfied. Accordingly, we address these issues below.

Numerosity

Pursuant to La. C.C.P. art. 491(A)(1), the first requirement for maintaining a class action is that the members of the class must be so numerous that joinder is impracticable. Johnson v. Orleans Parish Sch. Bd., 2000-0825, p. 12 (La.App. 4 Cir. 6/27/01), 790 So.2d 734, 743. The determination of numerosity is not only based on the number of putative class members, but is also based upon considerations of judicial economy, financial resources of class members, and the size of individual claims. Chalona v. Louisiana Citizens Property Ins. Corp., 2008-0257, p. 6 (La.App. 4 Cir. 6/11/08), 3 So.3d 494, 500-01. The burden is on the plaintiff to make a prima facie showing that a definable group of aggrieved person’s exists and that the class is so numerous that joinder is impractical. Johnson, 2000-0825, p 7-8, 790 So.2d at 740-41. No set number has been established that automatically makes joinder impractical, instead, the determination is based on the facts and circumstances of each case. However, this Court has found that a presumption arises that joinder is impractical if more than.forty class members exist. Husband, 2008-1527, p. 9,16 So.3d at 1229 (citing Vela v. Plaquemines Parish Gov’t, 1994-1161 (La.App. 4 Cir. 6/29/95), 658 So.2d 46).
The trial court found that the numerosity requirement was satisfied, noting that the proposed class of condominium owners in this matter is more than double the forty required to create a presumption for numerosity. In fact, the record reflects that roughly eighty-three condominium owners fit within the class definition. For *328 this reason, we do not find that the trial court was manifestly erroneous in determining that this prerequisite was met for the purposes of class certification.

Commonality

 The second requirement for certification is that there exist questions of law and fact common to the class. La. C.C.P. art. 591(A)(2). This court has found that commonality exists where there is at least one issue of law or fact, the resolution of which will affect all or a significant number of putative class members. Davis v. Am. Home Prods. Corp., 2002-0942, p. 14 (La.App. 4 Cir. 3/26/03), 844 So.2d 242, 254. Generally, this involves a two-step inquiry: (1) a determination that common issues predominate over questions affecting only individual members, and (2) a determination that the class action procedure is superior to other procedural mechanisms. Johnson, 2000-0825, p. 14, 790 So.2d at 744.
|7As defined by the trial court, the first category of class members are those who were damaged by the Association’s actions and/or breaches of agreements or duties associated with the obtaining of hurricane insurance. Specifically, the plaintiffs allegation is that the1 Association was negligent in failing to secure a hurricane insurance policy for the entire complex with less than a 10% deductible. The insurance policy and its deductible at issue applied to the common areas of the complex. All condominium owners utilize the common areas - of the complex and own a similar share of this space. For this reason, the question of the Association’s negligence in obtaining this policy is a common question of law and fact between all class members.
' The second certified category is defined as those who were damaged by the Association’s action and/or breaches of agreements or duties' associated with the delay in completing post-Katrina repair work in the common areas of the complex. The record clearly reflects that the Association was responsible for the maintenance and repair of the common areas, as well as the post-hurricane repair and recovery[5]. It is clear from the record that all putative class members were harmed by the same alleged conduct — that is, the negligence of the Association after Hurricane Katrina. After the hurricane, many condominium owners, could not access their units since the common areas were not being repaired in a timely [^manner. Whether the Board retained a competent contractor and commenced timely repairs is a common issue which affects all members of the class. Similarly, whether the Board should have “dismissed” the contractor in a timely manner if it felt unnecessary delays were occurring is also a common issue affecting the entire class. To separate these actions would be unduly burdensome to the court.
Accordingly, the trial court did not commit manifest error in finding that the commonality existed in this matter.

*329
Typicality

The third requirement for maintaining a class is that the claims or defenses of the representative parties be typical of the claims or defenses of the class. La. C.C.P. art. 591(A)(4). If the representative plaintiffs’ claims arise out of the same event or course of conduct as the putative class members’ claims, and are based on the same legal theories, the typicality requirement is satisfied. Davis, 2002-0942, p. 17, 844 So.2d at 256- The testimony of Ms. Duhon establishes that the issues affecting her interests are aligned with the common issues affecting the class in that they arise from the same event, practice or course of conduct as the claims of the putative class members. Moreover, they are based on the same legal theory — i.e., that the Associations negligence and/or breach of duty caused the damages alleged. The claims and defenses among potential members of the class would be duplicated, and discovery redundant, if the actions were handled individually. Thus, we do not find that the trial court erred in determining that the “typicality” requirement was satisfied.

Adequacy of Representation

[nThe fourth requirement is that the representative parties will fairly and adequately protect the interests of the class. La. C.C.P. art. 591(A)(4). “Adequacy of representation for class certification requires that the claims of the proposed class representatives be a cross-section of, or typical of, the claims of all class members.” Husband, 2008-1527, p. 11 (La.App. 4 Cir. 8/12/09), 16 So.3d 1220, 1230 (citing Andry v. Murphy Oil, U.S.A., Inc., 1997-0793, p. 6 (La.App. 4 Cir. 4/1/98), 710 So.2d 1126, 1130). We have identified four factors relevant to this inquiry, namely: ■ (1) The representative must be able to demonstrate that he or she suffered an- actual-injury; (2) the representative should possess firsthand knowledge or experience of the conduct at issue in the litigation; (3) the representative’s stake in the litigation, that is, the substantiality of his or her interest in winning the lawsuit, should be significant enough, relative to., that of other class members, to .ensure that representative’s conscientious participation in the litigation; and (4) the representative should not have interests antagonistic to or in direct .conflict with those of other class members. Claborne v. Hous. Auth, of New Orleans, 2014-1050, pp. 14-15 (La.App. 4 Cir. 4/15/15), 165 So.3d 268, 282, writ denied, 2015-0946 (La.9/11/15), 176 So.3d 1039.
The defendants’ contend that Ms. Duhon has antagonistic interests to those of other potential class members. This argument, in part, is rooted. in the fact that the Association is a defendant in a separate suit brought by the contractor it originally hired to make repairs to the complex. In that matter, the Association asserted claims in reconvention that the contractor was at fault' for the delays.[6] In fact, it is not refuted that there were unnecessary delays in the repair of the [ ^common areas that caused damaged to the condominium owners. However, the Association maintains that those delays were due to the fault of their contractor, while Ms. Duhon alleges the Association was at fault through their own negligence. Nonetheless, the Association’s lawsuit against their contractor does not create competing interests between Ms. Duhon and other members of the class. The record suffi *330 ciently demonstrates that other condominium owners have suffered losses or damages as a result of the alleged delays, and these damages could be determined by a fact finder, to be the fault, in whole or in part, of the Association.
Further, the defendants see Ms. Du-horis claims as antagonistic to the class members because the current condominium owners, which Ms. Duhon is not, could be adversely impacted by additional Association assessments that would be necessary to satisfy a judgment. However, the record clearly reflects that State Farm insures the Association for such claims, and nowhere in the record does it indicate that State Farm has denied coverage or sought a declaration from the court regarding its coverage.
For these reasons, we do not find that the trial court manifestly erred when determining that Ms. Duhon would fairly and adequately provide protection for the interests of the class.

Article 591(B)(8)

Because we have determined that the requirements set forth in La. C.C.P. 591(A) have been satisfied, we must now examine the trial court’s finding that predominance and superiority requirements of La. C.C.P. art. 591(B)(3) have also been met. As noted above, Article 591(B)(3) requires that “[t]he court finds that |nthe questions of law or fact common to the members of the class predominate over any questions affecting only an individual members, and that a class action is superi- or to other available methods for the fair and efficient adjudication of the controversy.”
The claims of all class members originate from one common source; namely, the negligence of the Association relative to the repair and recovery of the common elements of the complex after Hurricanes Katrina and Rita. This negligence prevented all condominium owners from gaining access to their properties. This issue, once resolved, affects every claim. The fact that putative class members may have varying degrees of damages does not preclude class certification. See Bartlett v. Browning-Ferris Industries Chemical Services, Inc., 1999-0494 (La.11/12/99), 759 So.2d 755.
Further, “[w]hen a common character of right exists, a class action is superior to other available adjudicatory methods in effectuating substantive law, and promoting judicial efficiency and individual fairness.” Husband, 2008-1527, p. 17, 16 So.3d at 1233. Here, proceeding individually undermines judicial economy, and leads to the potential of inconsistent adjudications. Our jurisprudence has previously expressed concern in instances where individual class member would have to prove causation separately, or where there was a risk that the class would degenerate into a series of individual trials; however, neither of those concerns exist in the instant matter. See Brooks v. Union Pacific R. Co., 2008-2035, p. 21 (La.5/22/09), 13 So.3d 546, 561; Alexander v. Norfolk S. Corp., 2011-2793, p. 3 (La.3/9/12), 82 So.3d 1234, 1236. As noted above, the question of whether the Association was negligent in its actions or inac-tions after the storm is one that can be answered for the class as a whole. Accordingly, we do not find that the trial |12court was manifestly erroneous in deter- ' mining that Article 591(B)(3) is satisfied in this matter.

CONCLUSION

For these reasons, we find that the trial court did not abuse its discretion in certifying the class.
AFFIRMED.

. Wagner — Truax, Inc., the property manager of the complex, and Jack Rose, the president of the Association, were subsequently dismissed from the lawsuit and are not pertinent to this appeal.

. Our ruling pretermitted consideration of the issues raised on appeal and reserved the parties’ rights to appeal after remand.

. On remand, the matter was heard by Judge Clare Jupiter because, Judge Lloyd Medley, the district court judge who rendered the initial judgment granting class certification, had retired.

. La. C.C.P. art. 591 provides, in pertinent part:
A. One or more members of a class may sue or be sued as representative parties on behalf of all, only if:
1. The class is so numerous that joinder of all members is impracticable.
2. There are questions of law or fact common to the class.
3. The claims or defenses of the representative parties are typical of the claims or defenses of the class.
4. The representative parties will fairly and adequately protect the interests of the class.
5. The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case. This prerequisite shall not be satisfied if it is necessary for the court to inquire into the merits of each potential class member’s cause of action to determine whether an individual falls within the defined class.
B. An action may be maintained as a class action only if all of the prerequisites of *327 Paragraph A of this Article are satisfied, and in addition:
[[Image here]]
3. The court finds that the questions of law of fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to . these findings include:
a) The interest of the members of the class in individually controlling the prosecution or defense of separate actions;
b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
c) The desirability or undesirability of concentrating the litigation in the particular forum;
d) The difficulties likely to be encountered in the management of the class action;
e) The practical ability of individual class members to pursue their' claims without class certification;
f) The extent to which the relief plausibly demanded on behalf of of against the class, including the vindication of such public policies or legal rights as may be implicated, justified the costs and burdens of class litigation.

. The by-laws of the Association provide, in part, that the Board of Directors, on behalf of the Association:
"Designate hire and dismiss of the personnel necessary for the maintenance, operation, repair, and replacement of the Common Elements and provide service for the Property and, where appropriate, provide for the compensation of such personnel and for the purchase of equipment, supplies and material to be used for such personnel in the performance of their duties,,.. ” Further, the by-laws provide that the Association was to "[m]ake, or contract for the making of, repairs, additions, and improvements to or alteration of the Property, and repairs to the restoration of the Property, in accordance with these Bylaws, after damage or destruction by fire or other casualty, or as a result of condemnation or eminent domain proceedings.” ' ‘ •

. The original contractor, Favalora Constructors, Inc,, filed its petition for damages on December 23, 2008, while the Association filed its recónvéntional demand ‘on April 8, 2009.