| iThis appeal is of a trial court judgment granting a class certification. For the reasons that follow, we vacate the trial court judgment and remand for further proceedings.
BACKGROUND
The City of New Orleans (the “City”) is the owner of a building known as the “City Hall Annex” (the “Annex”), located at 2400 Canal Street, in New Orleans, Louisiana.[1] In a Petition for Damages filed on May 12, 2000, plaintiffs, individually and on behalf of those similarly situated, claimed to have suffered personal injuries as a result of them exposure to “dangerous levels of hazardous chemicals including potassium hydroxide, hydrochloric acid and hydrofiboric acid.”[2] Plaintiffs alleged that the City was *803 aware that “hazardous, dangerous | achemicals were present” at the Annex, but “nonetheless ordered petitioners and those similarly situated to work in this dangerous environment.” They further alleged that the City “negligently and intentionally caused and/or allowed” the presence of these chemicals at the Annex. Plaintiffs’ suit was brought individually and on behalf of “those similarly situated, all persons who have been exposed to or contaminated by toxic, hazardous chemicals present on the premises at 2400 Canal Street.” The Petition then reiterates that the class action is instituted “pursuant to the provisions of [La.C.C.P.] Article 591, et seep,” by the plaintiffs and:
... all similarly situated persons who have sustained damages arising or resulting from the circumstances, events, acts and omissions complained of herein, specifically, all persons who sustained harm due to the presence of and exposure to hazardous chemicals at the building at 2400 Canal Street.
By way of an amending petition filed on April 6, 2001, plaintiffs added Pan Am as a defendant to this suit, alleging that the chemicals stored at the Annex were placed there by Pan Am and that the storage of the chemicals “created an unreasonably dangerous condition for subsequent occupants of’ the Annex. After the trial court granted a dilatory exception of vagueness filed by Pan Am, plaintiffs amended their petition to clarify that Pan Am was the former owner of the Annex and that Pan Am used the chemicals to clean its printing presses. Plaintiffs further alleged that Pan Am stored the chemicals in containers not intended for long term use, a result of which was the “leakage, spillage and/or diffusion of chemical vapors,” which contaminated the building. According to plaintiffs, the | ^contamination of the building persisted until the chemicals were removed in December, 1999, although the building remained contaminated thereafter.[3]
Plaintiffs filed a Third Amended Petition on June 22, 2005 to add Poydras Square, Inc., and New Orleans Centre Associates, a Louisiana partnership in commendam (collectively referred to as “Poydras Square”), as defendants. In this third petition, plaintiffs alleged that Poydras Square owned the property after Pan Am and that, while Poydras Square did not buy the chemicals stored at the Annex, it allowed the chemicals to remain on the property during the period of its ownership, failed to dispose of them or engage-in clean-up measures, and failed to warn of the dangers associated with the chemicals.
Over the next nine years, the parties filed various pleadings, including cross-claims, motions for summary judgment and various other motions. Then, for four days in September and October, 2015, the trial court held a hearing on the issue of class certification. By judgment dated June 30, 2016, the trial court granted plaintiffs’ request for class certification. It is from this judgment that the City, Pan Am and NID Corporation (the successor in interest to Poydras Square) timely appealed.

Assignments of error on appeal

The City, Pan Am and NID (collectively sometimes referred to herein as “defen *804 dants”) together contend that the .trial court erred in granting class certification in several respects: namely, that the plaintiffs failed to (1) meet the commonality, typicality and numerosity requirements; (2) meet the requirement |4that the class be defined objectively in terms of ascertainable criteria; and (3) meet the requirements of La. C.C.P. art. 591 (including the predominance and superiority requirements). They further maintain that the trial court erred in altogether failing to address La.C.C.P. art. 591 C. Pan Am also argues that the trial court failed to conduct a “rigorous analysis” as is required before certifying a class, while NID Corporation contends that the trial court erred in finding the class representatives to be adequate.
Because we find that the trial' court’s June 30, 2016 judgment fails to designate the class, the judgment lacks the decretal language necessary to render the judgment a final and appealable judgment. We therefore vacate the judgment and remand this matter to the trial court for further proceedings.
DISCUSSION
Before an appellate court may consider the merits of an appeal, it has a “duty to determine sua sponte whether subject matter jurisdiction exists, even when the parties do not raise the issue.” In re Med. Review Panel of Hurst, 16-0934, p. 1 (La. App. 4 Cir. 5/3/17), 220 So.3d 121, 2017 WL 1719051, quoting Moon v. City of New Orleans, 15-1092, 15-1093, p. 5 (La. App. 4 Cir. 3/16/16), 190 So.3d 422, 425. As this Court recently explained:
Por- a judgment to be a “valid final judgment,” it must contain specific “decretal language.” [Bd. of Supervisors of Louisiana State Univ. v. Mid City Holdings, L.L.C., 14-0506, p. 2 (La. App. 4 Cir. 10/15/14), 151 So.3d 908, 910.] “ ‘A valid judgment must be precise, definite and certain. ... The decree alone indicates the decision. ... The result decreed must be spelled out in lucid, unmistakable language. .... The quality of . definiteness is essential to a proper judgment.’” Id., (quoting Input/Output Marine Sys., Inc. v. Wilson Greatbatch, Tech., Inc., 10-477, pp. 12-13 (La. App. 5 Cir. 10/29/10), 52 So.3d 909, 915-16). In . the absence -of the necessary, decretal language, the judgment is not final and appealable. Tsegaye v. City of New Orleans, 15-0676, p. 3 (La. App. 4 Cir. 12/18/15), 183 So.3d 705, 710, writ denied, 16-0119 (La. 3/4/16), 188 So.3d 1064.
Urquhart v. Spencer, 15-1354, p. 3 (La. App. 4 Cir. 12/1/16), 204 So.3d 1074, 1077. The judgment must identify, inter alia, “the- relief that -is -granted or denied.” Id., quoting Mid City Holdings, 14-0506 at p. 3, 151 So.3d at 910. Likewise, as the Court noted in Urquhart, “‘[t]he specific relief granted should be determinable from the judgment without reference to an extrinsic source such as pleadings or reasons for judgment.’” Id., 15-1354, pp. 3-4, 204 So.3d at 1077. (quoting Input/Output Marine, 10-477, p. 13, 52 So.3d at 916).
 A review of cases involving class actions clearly demonstrates that a trial court is to specifically define the class. See, e.g., Baker v. PHC-Minden, L.P., 14-2243 (La. 5/5/15), 167 So.3d 528, 535 (where the trial court set forth in great detail the class definition, including sub-classes); Claborne v. Hous. Auth. of New Orleans, 14-1050, p. 17 (La. App. 4 Cir. 4/15/15), 165 So.3d 268, 283, writ denied, 15-0946 (La. 9/11/15), 176 So.3d 1039 (where the trial court rejected the class definition suggested by the plaintiffs and set forth its own specific definition of. the class and this Court ’ affirmed, finding the class to be “clearly and objectively defined”); Smith *805 v. City of New Orleans, 13-0802, p. 9 (La. App. 4 Cir. 12/23/13), 131 So.3d 511, 518, writ denied, 14-0173 (La. 4/4/14), 135 So.3d 644, and writ denied, 14-0174 (La. 4/4/14), 135 So.3d 645(finding that the class “definition [specifically set forth in the trial court judgment] is clear”); Guidry v. Dow Chem. Co., 12-0436, 12-0198, p. 8 (La. App. 4 Cir. 11/14/12), 105 So.3d 900, 906, writ granted in part and remanded, 2012-2696 (La. 3/1/13), 108 So.3d 755 (affirming the trial court’s definition as “clearly ascertainable”).
|nIn the instant matter, the trial court judgment merely states as follows:
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that this Court hereby GRANTS the request for class certification, finding that all of the requirements provided for in established jurisprudence and Article 591(A)(1) though (5) of the Louisiana Code of Civil Procedure have been satisfied.[4]
There is nothing in the judgment that defines the class and accordingly, the judgment fails to meet the requirement that it be precise, definite or certain. Likewise, there is no manner by which to determine how the class is defined without looking at extrinsic sources.
We note, too, that our well-settled jurisprudence indicates that a trial court’s “written reasons for judgment form no part of the judgment, and that appellate courts review judgments, not reasons for judgment.” Wooley v. Lucksinger, 09-0571, p. 77 (La. 4/1/11), 61 So.3d 507, 572, quoting Bellard v. American Cent. Ins. Co., 07-1335 p. 25 (La. 4/18/08), 980 So.2d 654, 671; Greater New Orleans Expressway Commission v. Olivier, 02-2795 p. 3 (La. 11/18/03), 860 So.2d 22, 24. Even if .'we were to rely on the trial court’s.reasons for judgment in this case, we would find no express or, specific class definition. In those reasons, the trial court notes what the plaintiffs sought, stating as follows:
Plaintiffs seek certification of a class consisting of all workers employed - at the Annex who were exposed to toxic chemicals storéd in the basement of the building starting-.in August 1982 until December 9,1999 and who suffered injury as a result of that exposure.
⅜ -⅜ }Ji ¾! ⅞
^Plaintiffs seek to certify as- a class all persons who worked at the Annex building from 1982 to December 9, 1999 and were exposed to the toxic barrels, a clearly ascertainable class which can be verified through employment records and worksheets.
While the trial court makes no comment after the first statement setting forth what the plaintiffs were seeking, directly after the second statement, the trial court indicates that “[t]his Court finds that Plaintiffs have satisfied the element of numerosity.” The trial court likewise found that the' plaintiffs “satisfied the element of typicality and adequacy of representation.” However, the trial court never actually sets forth how the class is to be defined. Nor does the trial court distinguish whether the class consists of “workers employed at the Annex” or “all persons who worked.at the Annex;” both groups- of persons are identified in the reasons for judgment. The terms “employed” and “worked” are not entirely synonymous. Those who “worked” in the Annex could arguably encompass anyone who performed work at the Annex *806 over the years, including those who were not employees of any entity which had offices at the Annex; e.g., plumbers, electricians, other workers performing repairs at the Annex over the years. Indeed, their exposure to allegedly “toxic and hazardous materials” could be as significant as at least one of the putative class representatives, Ms. June Armour, who the trial court noted “had worked in the building for only five weeks before the December 9, 1999 incident.” In fact, Ms. Armour, as a “parking control officer,” actually spent little time in the Annex; she testified that she “would report to work for 8:30.,. and [then] go out on the street for 9:00 o’clock [sic].” She would return to the building to clock out at 5:00.
Accordingly, even if we were to consider the trial court’s reasons for judgment, they do not set forth a precise definition of the class, which is essential | Rin a class action proceeding. La. C.C.P. art 591 A(5) specifically calls for a “class [which] is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case.” The requirement of a precise class definition is not a mere formality and cannot be overlooked given that “[t]he purpose of [its] requirement is to ensure that the class is not amorphous, indeterminate, or vague, so that any potential class members can readily determine if he/she is a member of the class.” Chalona v. Louisiana Citizens Prop. Ins. Corp., 08-0257, p. 9 (La. App. 4 Cir. 6/11/08), 3 So.3d 494, 502. The class definition is also directed at serving another purpose of the class action-to “ ‘adjudicate and obtain res judi-cata effect on all common issues applicable not only to the class representatives who bring the action, but to all others who are similarly situated.’” Chiarella v. Sprint Spectrum LP, 04-1433, p. 16 (La. App. 4 Cir. 11/17/05), 921 So.2d 106, 118, citing Ford v. Murphy Oil U.S.A., Inc., 96-2913, p. 4 (La. 9/9/97), 703 So.2d 542, 544; Banks v. New York Life Insurance Co., 98-0551, p. 2 (La. 12/7/98), 722 So.2d 990; Andry v. Murphy Oil, U.S.A., Inc., 97-0793, p. 3 (La. App. 4 Cir. 4/1/98), 710 So.2d 1126, 1129.
Thus, where the class is not definitively and specifically identified by the trial court, the objectives of the class action proceeding cannot be met. Absent a clear class action definition by the trial court, a judgment cannot be reviewed on appeal. We therefore vacate the trial court judgment and remand for further proceedings.
VACATED AND REMANDED

. The record reflects that the Annex was originally owned by Pan-American Life Insurance Company ("Pan Am”), which sold it to Poy-dras Square Associates on August 10, 1982. Poydras Square Associates leased the Annex to the City for fourteen months until January 14, 1985, when it exchanged the Annex with the City for other properties. We note that, while the sale and exchange documents list the entity as "Poydras Square Associates,” it is also referred to by some of the parties as "Poydras Square, Inc.”

. Plaintiffs were employed by the City and/or Pan Am and alleged that "[d]espite [the City’s] knowledge of the risks presented by *803 these chemicals, it (intentionally recklessly and callously) nonetheless ordered petitioners and those similarly situated to work in this dangerous environment with constant exposure to deadly, dangerous, hazardous, and harmful chemicals.”

. On December 9, 1999, an incident occurred at the Annex and the New Orleans Fire Department was called to the site in response to a report of smoke and vapors emanating from the ground floor.

. In order for a class to be certified, the plaintiffs must establish five prerequisites for maintaining a class action proceeding, which are set forth in La. C.C.P. art. 591 A: “(1) Numerosity; (2) Commonality; (3) Typicality; (4) Adequacy of Representation; and (5) Objectively Defined Class,” Duhon v. Harbor Homeowners’ Ass’n, Inc., 15-0852, p. 5 (La. App. 4 Cir. 6/30/16), 197 So.3d 322, 327, writ denied, 16-1448 (La. 11/15/16), 209 So.3d 779.