844 So.2d 242 (2003)
Terri DAVIS, Charlene Unbehagen, Rachel Flanagan and Joseph Battle, Individually and on Behalf of His Minor Daughter, Victoria Wilson
v.
AMERICAN HOME PRODUCTS CORPORATION, A Delaware Corporation d/b/a Wyeth-Ayerst Laboratories.
Gaynell Ely and Stacy Smith
v.
American Home Products Corporation d/b/a Wyeth Ayerst Corporation.
Akiva Holmes and Angelina Sever, Individually and on Behalf of all other Similarly Situated Plaintiffs,
v.
Wyeth-Ayerst Laboratories, A Division of American Home Products Corporation; State of Louisiana, Through the Office of Public Health, Family Planning Division and Through the Department of Social Services, Office of Family Support.
Nos. 2002-CA-0942, 2002-CA-0943, 2002-CA-0944.
Court of Appeal of Louisiana, Fourth Circuit.
March 26, 2003.
*246 John P. Coale, Jr., Coale, Cooley, Lietz, McInerny & Broadus, Washington, DC, Darleen M. Jacobs, Jacobs & Sarrat, Robert G. Harvey, Sr., Harvey, Jacobson & Glago, Terrill W. Boykin, Rodney, Bordenave, Boykin & Ehret, Stephen B. Murray, Linda S. Harang, Murray Law Firm, New Orleans, LA, Richard J. Arsenault, Neblett, Beard & Arsenault, Alexandria, LA, J. Robert Ates, Ates & Associates, A PLC, Daniel E. Becnel, Jr., Becnel, Landry & Becnel, Reserve, LA, Calvin C. Fayard, Jr., Fayard & Honeycutt, Denham Springs, LA, T. Allen USRY, USRY, Weeks & USRY, Allan Berger, Berger & Forstall, New Orleans, LA, Bruce C. Dean, Gauthier, Downing, Labarre, Beiser & Dean, Metairie, LA, Leonard L. Levenson, Weigand, Levenson & Costa, George J.G. Roux, New Orleans, LA, for Plaintiffs/Appellees.
F. Lane Heard, III, Williams & Connolly, LLP Washington, DC, Henri Wolbrette, III, Kathleen A. Manning, McGlinchey Stafford, PLLC, New Orleans, LA, for Defendant/Appellant, Wyeth.
(Court composed of Chief Judge WILLIAM H. BYRNES, III, Judge DENNIS R. BAGNERIS, SR., and Judge DAVID S. GORBATY).
Chief Judge WILLIAM H. BYRNES, III.
In this consolidated case, the plaintiffs requested the certification of a class action, claiming strict liability for the allegedly defective product, the Norplant implant contraceptive device, manufactured by American Home Products Corporation d/b/a Wyeth Ayerst Corporation ("Wyeth"). The plaintiffs also named the State of Louisiana as a defendant. Wyeth, appeals the trial court's October 1, 2001 *247 judgment that granted the plaintiffs' motion for class certification and provided the definition of the class. We affirm.

Facts
The Norplant implant, a prescription drug, was approved by the Food and Drug Administration in 1990. The implant, consisting of six flexible thin capsules, contains levonorgestrel, a hormone used in oral contraceptives. The capsules are inserted below the female's skin in the upper arm and provide effective contraception for five years. The implant is a "time released" medication that releases a higher dose of levonorgestrel at the outset than it does at the end of its five-year life.

Procedural History in State Court
The defendant notes that the present three cases in this matter were consolidated suits filed in 1994 and 1995 that assert product liability claims against the manufacturer, Wyeth, based on the allegation that Norplant is defectively designed and caused injuries to users of the product.[1] The State of Louisiana was also named as a defendant.
The plaintiffs filed motions seeking class certification in these cases in 1995 in civil district court in Orleans Parish. In August 1996, the trial court ordered case management governing discovery on certification. At the end of 1996, the trial court issued an amended order that provided a deadline for the designation of experts to be called at the class certification hearing. The trial court extended the deadline for review of the documents and conducting depositions.
In June 2000, the trial court declined to rule on Wyeth's motion to strike the plaintiffs' experts prior to the class certification hearing. In March 2001, the trial court ordered that all evidence on class certification should be submitted by deposition, affidavits and exhibits. In April 2001, the plaintiffs substituted new class representatives and redefined the proposed class limited to 15 side effects. Wyeth filed its opposition to class certification, including the affidavits of the plaintiffs' experts.
After the July 26, 2001 hearing on class certification, on October 1, 2001, the trial court issued its judgment that granted the plaintiffs' motion to certify the class, and provided the definition of the class.
The trial court determined that the certified class is defined as:
All women who are or were residents of the State of Louisiana and who have or had the Norplant contraceptive device, and who, as a result of having the Norplant device, claim to be suffering with or claim to have suffered with at least one or more of the following adverse effects:
1. Changes or irregularities in menstrual bleeding, which may include any of the following: (a) an increased number of bleeding days; (b) prolonged bleeding; (c) spotting; (d) amenorrhea (no bleeding at all); (e) irregular onsets of bleeding; (f) frequent bleeding onsets; and/or (g) scanty bleeding
2. Pain or itching at or near the implant site
3. Infection at the implant site
4. Removal difficulties (which may include any of the following: severe *248 pain; general anesthesia required; more than one surgical procedure required; removal procedure lasted more than 1 hour; scarring on the skin at the implant site)
5. Headaches
6. Nervousness
7. Nausea
8. Dizziness
9. Adnexal enlargement (swelling of tissue near the implant site)
10. Dermatitis (painful skin inflammation)
11. Acne (inflammatory, pus-containing skin eruption)
12. Change of appetite
13. Mastalgia (breast pain)
14. Weight gain
15. Hirsuitism, Hypertrichosis (excessive body and facial hair in a masculine pattern), and/or scalp-hair loss
In addition to suffering with or having suffered with one or more of the above-listed adverse effects, a class member must also belong to at least one of the following three groups:
A. Having been surgically implanted with the Norplant device at a medical facility, clinic, or physician's office in the State of Louisiana.
B. Having had the Norplant device surgically removed at a medical facility, clinic or office in the State of Louisiana.
C. Were [sic] a resident of the State of Louisiana during the time that the Norplant device was implanted in your body.
The trial court named five plaintiffs as representatives of the certified class and found that the Plaintiffs' Committee was appointed and confirmed as Class Counsel.
In its Reasons for Judgment, the trial court stated that it was inclined to deny the State's exception of no cause of action at that time, and defer until after discovery was completed prior to trial. On October 30, 2001, the trial court issued supplemental reasons for judgment that included the exclusion of Wyeth's expert affidavits as "hearsay." Wyeth's appeal followed.
On appeal, Wyeth contends that the trial court erred in certifying the class based on the following claims:
(1) The plaintiffs offered no reliable scientific evidence connecting the alleged design defect with the alleged injuries;
(2) The class definition is defective because it does not match the alleged design defect;
(3) The individual issues will predominate over the common issue;
(4) Utilizing Bellwether trials is the best method to resolve the plaintiffs' claims; and
(5) The design defect cannot be a common issue for prescription drugs as a matter of Louisiana law.

Standard of Review
The judgment certifying the class in this consolidated action is appealable. Eastin v. Entergy Corp., 97-1094 (La.App. 5 Cir. 4/15/98), 710 So.2d 835. At the time that the present consolidated suits were filed in 1995, La. C.C.P. arts. 591 and 592 provided that the basic requirements of a class action included:
(1) A class so numerous that joinder is impracticable;
(2) The joinder of parties who are members of the class and who are able to prove adequate representation for absent members; and
(3) A "common" character among the rights of the representatives of the class *249 and the absent class members.[2]
See Andry v. Murphy Oil, U.S.A., Inc., 97-079397-0800 (La.App. 4 Cir. 4/1/98), 710 So.2d 1126, writ denied, 98-1158 (La.6/19/98), 720 So.2d 1213, writ denied 98-1178 (La.6/19/98), 720 So.2d 1214, and writ not considered, 98-1204 (La.6/19/98), 719 So.2d 473.
Under Louisiana law, a class action may be certified only if the numerosity, adequacy of representation, and commonality requirements are present. Billieson v. City of New Orleans, 98-1232, p. 9 (La.App. 4 Cir. 3/3/99), 729 So.2d 146, 154. The burden of proving the existence of all three elements falls on the party seeking to maintain the class action. Id.
A trial court has great discretion in deciding whether to certify a class, and its decision will not be overturned absent manifest error. Adams v. CSX Railroads, 92-1077 (La.App. 4 Cir. 2/26/93), 615 So.2d 476. Any errors to be made in deciding class action issues should be in favor of and not against the maintenance of the class action, because a class certification order is subject to modification if later developments during the course of the trial so require. McCastle v. Rollins Environmental Services of Louisiana, Inc., 456 So.2d 612 (La.1984).
The purpose and intent of a class action procedure is to adjudicate and obtain res judicata effect on all common issues applicable not only to the class representatives who bring the action, but to all other others who are similarly situated, provided they are given adequate notice of the pending class action and do not timely exercise their option of exclusion. Doerr v. Mobil Oil Corp., XXXX-XXXX, p. 4 (La.App. 4 Cir. 2/27/02), 811 So.2d 1135, 1141, writ denied, XXXX-XXXX (La.5/31/02), 817 So.2d 105, and writ denied, XXXX-XXXX (La.5/31/02), 817 So.2d 106.
Louisiana trial courts are afforded broad discretion in determining the class certification issues, and have wide latitude in considerations involving policy matters, and those requiring a preliminary analysis of the facts. Ellis v. Georgia-Pacific Corp., 550 So.2d 1310 (La.App. 1 Cir.1989), writ denied 559 So.2d 121 (La.1990).

Expert Testimony Wyeth's Claim that Plaintiffs' Experts Are Unqualified
Initially, Wyeth contends that expert testimony is necessary to show that the alleged injuries were caused by the alleged defects. Wyeth complains that the plaintiffs have not met the standards of Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and State v. Foret, 628 So.2d 1116 (La.1993), in conjunction with any scientific evidence used to establish their claims.
La.C.E. art. 702 states:
Art. 702. Testimony by experts
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
In State v. Foret, supra, 628 So.2d at 1121-1123, the Louisiana Supreme Court referred to Daubert and stated:
[The United States Supreme Court] replaced Frye[ v. U.S., 54 App.D.C. 46, *250 47, 293 F. 1013, 1014 (1923)] with a new standard that requires the trial court to act in a "gatekeeping" function to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Id. This requirement stems from a belief that the rules on expert testimony serve to relax "the usual requirement of first-hand knowledge" to ensure reliability on the part of a witness. 509 U.S. at 591, 113 S.Ct. at 2796. This relaxation is justified so long as "the expert's opinion (has) a reliable basis in the knowledge and experience of his discipline." Id.
* * *
Past decisions of this court have espoused similar sentiments regarding the admission of expert scientific testimony. In State v. Catanese, 368 So.2d 975 (La.1979), this court rejected Frye's "general acceptance" in the scientific community as the only test for the admissibility of polygraph results in criminal trials. This court held that, although the validity of polygraph evidence was not "universally accepted" in the scientific community, the evidence should be admissible in a limited fashion in post-trial proceedings. Id., at 981-82. This court noted that such scientific evidence should be admitted in those proceedings whenever the trial court, after balancing the probative value of the evidence against its prejudicial effect, determines that "the evidence is reliable and will aid in a decision." Id., at 978-79, 983. The admission of the evidence was subject to the "discretion of the trial judge." Id., at 983.
Like Catanese, Daubert refuses to precondition admissibility of expert scientific testimony solely upon its "general acceptance" in the scientific community, and is also similar to Catanese in its reliance upon the evidence's admissibility provided that the trial court properly exercise its gatekeeping function in balancing the probative value of the evidence against its prejudicial effect. [FN6 omitted.] Daubert goes further than Catanese in that it sets forth clearer guidelines as to how a trial court can determine the reliability of expert testimony in its consideration of the probative value aspect of the Catanese balancing test.... As we find the Daubert court's "observations" on what will help to determine this threshold level of reliability to be an effective guide, we shall adopt these "observations", as well. It is not lost upon us that this new standard serves to remove some of the barriers in the admission of expert testimony in many fields, including child sexual abuse cases.... [Emphasis added.]
The Daubert considerations for admissibility of expert testimony are: (1) the "testability" of the expert's theory or technique, (2) whether the theory or technique has been subjected to peer review and publication, (3) the known or potential rate of error, and (4) whether the methodology is generally accepted in the scientific community. See Doerr v. Mobil Oil Corp., supra.
In Safeco Ins. Co. of America v. Chrysler Corp., XXXX-XXXX, pp. 8-9 (La.App. 3 Cir. 7/31/02), 834 So.2d 1026, 1034, the Third Circuit stated:
On appeal, we will not disturb the trial court's vast discretion in determining the admissibility of expert testimony unless it is clearly erroneous. See Mistich v. Volkswagen of Germany, Inc., 95-0939 (La.1/29/96), 666 So.2d 1073.
We have adopted the standards set forth by the United States Supreme Court in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 *251 S.Ct. 2786, 125 L.Ed.2d 469 (1993), which regulate the admission of "scientific" testimony. In that case, the Supreme Court stated that the gatekeeping function of the trial court requires it to assess, among other things, the "reliability" of the methodology or formulation upon which the expert's opinion is based. The reliability of a non-scientist expert's testimony, when it is not formulated on a scientific research, is still judged using the Daubert standard. The Supreme Court has recognized such in Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). We have also recognized such in Darbonne v. Wal-Mart Stores, Inc., 00-551 (La.App. 3 Cir. 11/2/00), 774 So.2d 1022. Thus, the trial court's gatekeeping obligation applies to testimony based on "technical" and "specialized" knowledge. Id. In Kumho, 526 U.S. at 141-42, 119 S.Ct. at 1171, the Supreme Court stated:
[T]he test of reliability is "flexible," and Daubert's list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination.
The trial court's inquiry must be tied to the facts of the particular case. Id. The abuse of discretion standard applies to the trial court's ultimate conclusion as to whether to exclude expert witness testimony and to the trial court's decisions as to how to determine reliability. Id. [Emphasis added.]
Wyeth asserts that Dr. Andrew Campbell opined that Norplant is defective because, as a time-released drug, it releases a higher dose of hormone in the initial 12-18 months than it does over the latter 42-48 months of use, and that the greater dose causes serious and life threatening side effects. Dr. David Wurzel opined that the initial higher dosage is much greater than necessary to be effective as a contraceptive and there were alternative designs that could provide a constant hormone dose.
Wyeth avers that Dr. Campbell linked the alleged design defect to side effects that are no longer part of the case and did not address the 15 side effects stated in the judgment's definition of the class. Wyeth claims that Mr. Wurzel, the plaintiffs' biomechanical engineer expert witness, did not have any experience, education, or training in the design of a pharmaceutical product.
Wyeth maintains that the plaintiffs' two experts are not qualified in the fields of pharmacology (the discovery, chemistry, effects, uses and manufacture of drugs) and pharmacokinetics (the body's process of absorption, distribution, localization in tissues, biotransformation and excretion). Without expert testimony concerning the two fields, Wyeth claims that the trial court should have excluded the plaintiff's experts' testimony.
The trial court has vast discretion to balance the probative value of the testimony against its prejudicial effect. The trial judge did not err in finding that the merits of the claims must be proved at the trial on the merits. Proof of causation with respect to questions of individual damages is not part of the criteria for class certification. The fact that varying degrees of damages may result from the same factual transaction and same legal relationship or that class members must individually prove their right to recover does not preclude class certification. See McCastle, supra, 456 So.2d at 620; Atkins v. Harcross Chemicals, Inc., 93-1904, p. 3 *252 (La.App. 4 Cir. 5/17/94), 638 So.2d 302, 304, writ denied, 94-2158, 94-2161 (La.11/11/94), 644 So.2d 396; Adams v. CSX Railroads, supra, 615 So.2d at 483; Bartlett v. Browning-Ferris Industries Chemical Service, Inc., 99-0494, p. 3 (La. 1999), 759 So.2d 755, 756; Billieson v. City of New Orleans, supra, 98-1232, p. 17, 729 So.2d at 157; Ellis v. Georgia-Pacific Corp., supra, 550 So.2d at 1317.
Wyeth argues that the plaintiffs' experts did not address the class-defined side effects in stating the overdose hypothesis. However, Wyeth states in its brief that: "There is no dispute that Norplant is capable of causing the 15 listed side effects." Wyeth does not dispute that its product labeling information indicates that use of its Norplant device is, or probably is, associated with the adverse effects or reactions alleged by the plaintiffs. The parties do not dispute that for the first 12-18 months after the implant Norplant device is placed in a woman's body, she receives a greater daily dose of "levonorgestrel" that exceeds a minimum daily dose needed for pregnancy prevention. Undisputed is the fact that once implanted, the daily dosage of "levonorgestrel" cannot be regulated. The only way to stop the effects of the Norplant device is to have it surgically removed. The plaintiffs are not required to provide expert testimony to prove the above assertions where Wyeth does not dispute those characteristics.
Wyeth argues that the plaintiffs' theory might lead to the claim that every time-released medicine on the market is defective. However, the plaintiffs claim that the Norplant implant is defective in that it is placed in the body and cannot be removed without surgery. Other time-released medicine can be discontinued immediately by the user if side effects occur.

Wyeth's Motion to Submit New Authority
In granting Wyeth's motion for leave to submit new decisional authority and supporting memorandum, filed in this Court on January 17, 2003, we review Wyeth's claims. Wyeth attached a copy of a recently issued order in Newton v. Roche Labs., Inc., 243 F.Supp.2d 672 (W.D.Tex. 2002).
In Newton, the plaintiffs' expert, "Doctor" James T. O'Donnell, offered his opinion that the acne medication, Accutane, caused or precipitated the onset of the claimant Candis Newton's schizophrenia. Wyeth maintains that the trial court in the present case relied on O'Donnell's testimony to support the validity of the "overdose" theory involving the Norplant implant. In Newton, the order showed that O'Donnell did not have a Ph.D. and was not a pharmacologist but had done research in pharmacology. The Newton plaintiffs noted that O'Donnell had been a pharmacist for 28 years. The federal court found that O'Donnell lacked qualification and his testimony was unreliable in that case.
Newton differs from the present case because Newton did not involve a class action. In a class action, individual questions as to causation need not be proved for certification of the class. West v. G & H Seed Co., XXXX-XXXX (La.App. 3 Cir. 8/28/02), 832 So.2d 274.
In West, id., the plaintiffs brought their class action for product liability, redhibition, negligence, negligent misrepresentation, fraudulent concealment, intentional misrepresentation, fraud, and breach of contract against an insecticide manufacturer and distributors of rice seed, alleging damage to the plaintiffs' pond-grown crawfish crops. The Third Circuit affirmed the class certification. The Third Circuit stated: *253 ... whether ICON [insecticide] caused crawfish mortality, whether mortality was the result of the drought, or whether it was the result of another event is the primary question in this casea question that goes to the merits and one which we are not authorized to review at this stage. We do not construe the "aggrieved persons" aspect of numerosity as requiring the identification of farmers who can prove that their crawfish died as a result of ICON-treated rice seed, for such determination will be made at trial on the merits.... [Emphasis added.]
Id., XXXX-XXXX, pp. 15-16, 832 So.2d at 285.
The Third Circuit further noted:
At trial, common proof of causation and damages may include the chemical makeup of the ICON and its effect on crawfish in general and on a pond's soil and water, the movement of ICON from one field to another and through the water systems, whether its chemical composition changes through movement; ICON's permanence; or why the drought did not cause crawfish mortality. If this common proof is made, class members will then individually prove that ICON contaminated their ponds, the method of contamination, and any remaining individual questions associated with the different theories of alleged liability. We, therefore, find no manifest error with the trial court's determination that common liability issues outnumber individual ones. A class-wide trial would eliminate major issues from each member's required proof. [Emphasis added.]
Id., XXXX-XXXX, pp. 24-25, 832 So.2d at 290.
A certification hearing does not determine liability. For certification, a district court judge has vast discretion to admit or exclude expert evidence and/or testimony and, if admitted, to give it appropriate weight and value. Doerr, supra, XXXX-XXXX, p. 6, 811 So.2d at 1141. Wyeth's contention that Daubert does not include "common sense" scientific speculation is rejected. We cannot say that the trial court abused its discretion when it found that the plaintiffs showed that the time-released contraceptive Norplant produces the 15 various side effects listed on the packaging informational insert. Where the implant can cause the side effects, the trial court did not abuse its discretion in concluding that the plaintiffs have stated a reasonable hypothesis that the implant product is allegedly defective when it caused the 15 listed side effects where the initial dosage was higher and cannot be readily controlled without surgical removal.

Class Definition
Wyeth also contends that the class definition is defective because it does not match the alleged design defect. Wyeth urges that the plaintiffs articulated two definitions, one that aligned with their design defect theory and one that included many more Norplant users, whether or not they suffered injury from the "overdose." Wyeth maintains that the 15 side effects are common to all hormonal contraceptives. The overdose theory refers to the side effects that occurred because of the increase in their severity because of the greater amount of hormonal contraceptive released in the first 12-18 months.
The trial court did not include the overdose theory in its definition of the class. As previously noted, the plaintiffs provide a reasonable hypothesis that the implant product is allegedly defective where it can cause the listed side effects and cannot be readily controlled without surgical removal. *254 Further, plaintiffs alleged that an alternative method could be utilized in manufacturing the product.
In its reasons for judgment, the trial court did not abuse its discretion in referring to "the common sense argument that to give more of any drug will likely increase the risk of KNOWN side effects of the drug." In defining the class, the trial court did not limit the class to those who suffered from the overdose in the first 12-18 months but to the women who have used the Norplant device, and are or were Louisiana residents, who claim to have suffered from one or more of the 15 adverse side effects listed by Wyeth. It is logical that the heightened drug dosage in the initial 12-18 months would lead to an increased chance of side effects over the cumulative five years regardless of when the side effects were initially manifested or apparent. The trial court did not abuse its discretion in concluding that the plaintiffs provided a reasonable hypothesis. The class definition is not defective because it matches the alleged design defect.

Commonality
Wyeth argues that individual issues will predominate over the common issue. Wyeth maintains that the determination of whether Norplant caused any of the 15 symptoms for any of the plaintiffs will require a highly individualized analysis. The manufacturer asserts that the symptoms have many possible causes. If the plaintiffs prove a design defect, it would constitute only the threshold of a trial where the fact finder must consider evidence including: (1) each class member's medical history; (2) as to each side effect; (3) alternative explanations; (4) whether she followed her doctor's standard instructions to report timely any troublesome side effects, and whether she followed her doctor's advice regarding treatment that ameliorates or eliminates the side effects.
In affirming the certification of the class in West v. G & H Seed Co., supra, XXXX-XXXX, pp. 18-19, 832 So.2d at 287, the Third Circuit stated:
Commonality
Representative class members may sue if "[t]here are questions of law or fact common to the class." La.Code Civ.P. art. 591(A)(2). The common questions must predominate over questions affecting individual members. La. Code Civ.P. art. 591(B)(3)." The test of commonality is not a demanding one, and requires only that there be at least one issue, the resolution of which will affect all or a significant number of the putative class members. A common question is defined as one which when answered as to one class member is answered as to all of them." Duhe, 779 So.2d at 1078 (citations omitted). Moreover, "the mere fact that varying degrees of damages may result from the same factual transaction and same legal relationship or that class members must individually prove their right to recover does not preclude class certification." Bartlett v. Browning-Ferris Indus. Chem. Serv., Inc., 99-494, p. 3 (La.11/12/99); 759 So.2d 755, 756. Considering the evidence, we find no manifest error and that a common trial would be the most efficient way to determine the potential liability of Aventis and the seed distributor defendants. We do not believe the trial to be one where so little will be decided that judicial efficiency is lost.
Generally, Aventis argues that plaintiffs' damages have different causes; the alleged torts of misrepresentation differ for different groups of plaintiffs; plaintiffs have claims against different *255 tortfeasors; and plaintiffs' theories of recovery against various tortfeasors are different as are defenses raised against plaintiffs' claims. Aventis suggests that any one of these differences prevents class certification. We disagree.
The Third Circuit found that the claims and defenses were based on the same legal theories. Also, it declared that certification of the state-wide class for damages arising out of the reduction in crawfish production based on the use of pesticide-treated rice seed was proper, where the evidence showed that the pesticide was used throughout the state, and the damage was not localized.
The West court determined that the:
... predominant liability issues related to the toxicity of ICON [pesticide] are indeed common to the class. If individual questions of damages do not preclude class action, and if fault allocation dictates allocation of damages, then fault allocation cannot preclude the action, notwithstanding the intricacies associated therewith.
* * *
... While we agree with Aventis [the manufacturer] that the allocation of fault in this case may be necessary and may be more than simplistic, the defendant has cited no case suggesting that fault allocation is inapplicable to class action suits.
Id., XXXX-XXXX, pp. 29-30, 832 So.2d at 292-293.
West noted that in Scott v. American Tobacco Co., 98-0452, pp. 4-5 (La.App. 4 Cir. 11/4/98), 725 So.2d 10, writ denied, 98-3016 (La.2/26/99), 731 So.2d 189, this court distinguished Ford v. Murphy Oil U.S.A., Inc., 96-2913 (La.9/9/97), 703 So.2d 542; on rehearing in part on other grounds, 96-2913 (La.10/10/97), 710 So.2d 235. In Ford, the plaintiff sued several petrochemical plant owners, claiming physical and property damages resulting from combined and individual emissions from the defendant plants and involved a combination of substances emitted by different defendants. In Scott, the plaintiffs were smokers who brought a class action against cigarette manufacturers, seeking medical monitoring. Scott found that Ford concerned a combination of substances emitted by different defendants that might involve different combinations for every member as well as different effects that would be different for each member of the class. However, Scott dealt with one substance, nicotine, and one effect, addiction. It did not matter that each member of the class was not harmed on the same date or sustained the same amount of injury.
Scott stated: "Tracing the complaint of the class in the instant case to a single source, nicotine, is consistent with the admonition found in Ford that only mass torts `arising from a common cause' ... may be appropriate for class certification..." Scott, 98-0452, p. 3, 725 So.2d at 13. In the present case, the complaint of the class is traced to a single source, the Norplant implant, and is appropriate for class certification.
Scott distinguished Castano v. American Tobacco Co., 84 F.3d 734 (5 Cir. La.1996), where the Fifth Circuit rejected the certification of a class for nicotine addition. However, litigation was being conducted on a national basis. That problem was minimized in Scott and West where the litigation was localized in Louisiana. In the present case the class is limited to women who were or are residing in Louisiana who had used a surgically implanted Norplant contraceptive.
The Castano Court found that the potential damage recovery by each plaintiff was likely to be high or in the vicinity of *256 millions of dollars. The present case deals with most Louisiana plaintiffs who individually are more likely to recover minor damages. As in Scott, we see no other economically reasonably feasible way for the members of the class to pursue this litigation.
Further, Wyeth complains that definitions includes three categories of plaintiffs: (1) those who suffered from side effects in the first 12-18 months; (2) those who suffered from unidentified side effects; and (3) those who suffered pain and/or scarring resulting from the insertion or removal of the Norplant capsules. The definition of the class includes claims of those who suffered pain and/or scarring resulting from the insertion or removal of the Norplant capsules because those features are listed as part of the 15 side effects identified in the product's labeling information and are readily identifiable. Only one category exists: women who were or are living in Louisiana, who used the Norplant implant, and who suffered from the 15 side effects that Wyeth listed in the labeling of the Norplant implant product.

Typicality or Adequacy of Representation
The test for typicality, like commonality, is not demanding. See West, supra, citing Duhe v. Texaco, Inc., 99-2002 (La.App. 3 Cir. 2/7/01), 779 So.2d 1070, 1079, writ denied, 01-0637 (La.4/27/01), 791 So.2d 637. If the representative plaintiffs' claims arise out of the same event or course of conduct as the class members' claims, and are based on the same legal theory or theories as those of the rest of the class, then the "typicality" requirement is satisfied. Id.
"Adequacy" is a primary requirement for certification where the class representatives must be adequate advocates for the class. La. C.C.P. art. 592. The representatives' claims must be a cross section of, or typical of the claims of the other class members. Adams v. CSX Railroads, supra, 615 So.2d at 482.
In the present case, the plaintiffs note that the criteria combines elements of commonality and adequacy by requiring that the class representatives assert claims that are typical or a cross section of those asserted or raised by the rest of the members of the class. Although the claims of the class representatives may differ from each other and those of the other class members in degree, they do not differ in type. The damages suffered by the class representatives are the same type that were claimed to have been suffered by Louisiana women from the Norplant device.
Andry v. Murphy Oil, U.S.A., Inc, supra, involved claims in relation to fire, explosion and emissions at an oil refinery plant. This Court stated:
... The claims asserted by the class representatives include claims for evacuation, inconvenience, mental anguish and suffering, fear, anxiety, emotional distress, and economic damages for broken windows, removal of soot and debris, medical expenses, and business interruption. Although a claim by a particular class representative with regard to the exact damage claimed may not be typical, the class of damages asserted by each representative is. We, therefore, find nothing in the record to support the defendants' argument that the class representatives will not adequately represent the absent class members.
Id. 710 at 1130-31.
In the present case, although a claim by a particular class representative regarding the exact damage may not be typical, the class of damages asserted by each representative is. The class representatives will adequately represent the absent class *257 members. The class representatives have suffered side effects that are typical of the class.
The Norplant device that was implanted in each plaintiff originated from the same manufacturer.
In Scott v. American Tobacco Co., supra, 725 So.2d at 12, this Court stated:
Certification of the class in this case is proper because it essentially boils down to one fundamental question: Is a cigarette that contains nicotine a defective product? There should be one answer to this question, and the only practical vehicle that can effectively arrive at one consistent answer is the class action procedure.
In the present case, the plaintiffs assert that the Norplant device is defective in that the dosage is too high in the first 12-18 months, the higher dosage is more likely to cause the listed side effects, and the dose cannot be discontinued immediately without surgery. With respect to the Norplant device, the plaintiffs maintain that an alternative method could have been utilized without the greater dosage at the beginning of the time-released medication. As in Scott, certification of the class in the present case is proper because it essentially boils down to one issue. The issue is whether the one product, Norplant implant, produced by one manufacturer, Wyeth, is defective because the product had the above characteristics and caused injury to the class members. As stated by the plaintiffs, "Certification of the class is proper because it essentially boils down to one fundamental question: Is the Norplant contraceptive device a defective product? There should be one answer to this question, and the only practical vehicle that can effectively arrive at one consistent answer is the class action procedure."

Numerosity
A class action is appropriate whenever the interested parties appear to be so numerous that separate suits would unduly burden the courts, and a class action would clearly be more useful and judicially expedient than the other available procedures. Cotton v. Gaylord Container, 96-1958, p. 14 (La.App. 1 Cir. 3/27/97), 691 So.2d 760, 768. If a burden would result from the prosecution of individual suits, then the class action is more judicially efficient and therefore better than other procedural avenues. Billieson v. The City of New Orleans, supra, 98-1232, p. 9, 729 So.2d at 154. A determination of whether the numerosity requirement is met depends on the facts and circumstances of each case. Dumas v. Angus Chemical Co., 25,632, p. 6-7 (La.App. 2 Cir. 3/30/94), 635 So.2d 446, 450, writ denied, 94-1120 (La.6/24/94), 640 So.2d 1349. No set number is required. Id. Plaintiffs must show that joinder is impractical and there is a definable group of aggrieved persons. Cotton, supra, 691 So.2d 760. While the group must be definable, the plaintiffs are not required to identify every member of the potential class prior to certification. Andry, supra, 710 So.2d at 1129.
The determination of numerosity in part is based upon the number of putative class members, but is also based upon considerations of judicial economy in avoiding a multiplicity of lawsuits, financial resources of class members, and the size of the individual claims. West, supra, XXXX-XXXX, p. 14, 832 So.2d at 285, citing Johnson v. E.I. Dupont de Nemours & Co., Inc., 98-229 (5 Cir. 10/14/98), 721 So.2d 41.
In the present case, the plaintiffs are definable and can be easily identified because the plaintiffs were surgically implanted with the Norplant contraceptive, and have scarring. According to the affidavits of plaintiffs' counsel in the present *258 case, more than 1,800 women in Louisiana have used the Norplant device, and satisfy the class definition. The claimants are sufficient in number to meet the numerosity criteria. It is unlikely for the class members to be able to pursue their claims but for the class action procedure. This factor is important in cases such as the present one where many of the Norplant class members have claims that may prove to be relatively low in value, and the claims would be too costly to litigate on an individual basis. See Scott, supra, 725 So.2d at 18.

Hearsay Evidence
Wyeth also contends that the trial court erred in excluding the affidavits of Wyeth's experts, Dr. Leigh Thompson, Dr. Wayne Bardin, and Dr. Margaret Weber, based on hearsay where in March 2001, the trial court's second amended case management order declared that all evidence on class certification should be submitted by deposition, affidavits and exhibits.
In Ellis v. Georgia-Pacific Corp., supra, 550 So.2d at 1313-1314, the First Circuit stated:

ADMISSIBILITY OF AFFIDAVITS
Affidavits may be admissible under certain conditions concerning matters collateral to the issues on trial without specific statutory authority. Affidavits may be used in evidence during interlocutory or preliminary proceedings, such as, ex parte proceedings, a temporary restraining order, or a rule to show cause. Affidavits are used when there is a need to expedite the procedure. This is acceptable practice when the opposing party is given the opportunity to refute the affidavit. 2A C.J.S. Affidavits § 57 (1972).
The use of affidavits as a basis for decision is allowed in Louisiana under Code of Civil Procedure articles 966(B) and 967 for summary judgments. (FN2) No similar article is available in the Code of Civil Procedure for class actions. However, the use of affidavits to support motions for class actions is recognized in the federal system. United National Records, Inc. v. MCA, Inc., 99 F.R.D. 178 (N.D.Ill.1983). See also Fleming v. Travenol Laboratories, Inc., 707 F.2d 829 (5th Cir.1983); 2 Newberg, On Class Actions § 7.26 (2nd ed.1985).
Defendant specifically assigns error to the Mayer affidavit. The affidavit was submitted by plaintiff to provide information. The defendant had the opportunity at the August 11th hearing to refute the attestations or provide contradictory information.
The two cases cited by defendant precluding use of affidavits as inadmissible hearsay are inapposite. Neither concerned a class certification hearing. In Julius Cohen Jeweler, Inc. v. Succession of Jumonville, 506 So.2d 535 (La.App. 1st Cir.), cert. denied, 511 So.2d 1155 (La.1987), the affidavit was used to prove a fact at issue in the trial. In Board of Commissioners v. Louisiana Commission on Ethics, 416 So.2d 231 (La.App. 1st Cir.), cert. denied, 421 So.2d 248 (La.1982), the affidavit was submitted for use at the trial of a dilatory and a peremptory exception. The Court of Appeal affirmed the trial court's refusal to allow the affidavit. The appellant court relied on Louisiana Code of Civil Procedure Articles 930 and 931, which allow evidence to be introduced at the trial of the exceptions. The word "evidence" was interpreted to mean competent legal evidence that would be admissible at trial on the issues. Board of Commissioners, 416 So.2d at 238.

*259 We have no similar statutory guidance before us. However, the Louisiana articles on class actions are based on Federal Rule of Civil Procedure 23. Without guidance from Louisiana sources, treatises and federal cases can be useful. The Newberg treatise and the federal cases cited above provide support for the use of affidavits in class certification hearings.
The power to provide for notice and collateral matters is exercised by the court. Williams v. State, 350 So.2d 131, 138 (La.1977). We find that it was within the discretion of the trial judge to allow the affidavits at a class certification hearing. [Emphasis added.]
Any error in the trial court's discretionary exclusion of affidavits from Wyeth's expert witnesses was harmless where the trial court concluded that the plaintiffs' theory is logical and expert testimony in unnecessary in the present case.

Superior Method of Resolution of Claims
Wyeth contends that the trial court erred in finding that a class action was a superior method of resolution of the plaintiffs' claims where the plaintiffs' theory is novel, and bellwether trials have been used efficiently in Norplant litigation around the country. Wyeth maintains that bellwether trials are superior, and a class action is inappropriate, unwieldy and unworkable. Wyeth refers to Ford, supra, and Castano, supra, and observed that "historically, certification of mass tort litigation classes has been disfavored." Ford, supra, 703 So.2d at 550.
Prior to Ford, the Louisiana Supreme Court judicially extended the federal rule's application to the mass tort area, including long term multi-party, multi-theory tort cases. Donald C. Massey, Louis C. LaCour, Jr. and Valerie M. Sercovich: Curtailing the Tidal Surge: Current Reforms in Louisiana Class Action Law, 44 Loy. L.Rev. 7 (Spring 1998). Louisiana class action procedure became "more flexible" than the corollary federal procedure. Steven Plotkin, 1 Louisiana Civil Procedure 450 (1996).
Martin L.C. Feldman, Judge: Prodominence and Products Liability Class Actions: An Idea Whose Time Has Passed? 74 Tul.L.Rev. 1621, 1624 (June 2000), referred to In re American Medical Systems, Inc., 75 F.3d 1069 (6 Cir.1996), and stated that the case: "seems to echo the majority reluctance of most federal courts to certify a class when dealing with products liability class actions involving drugs or medical devices." In that case, the Sixth Circuit rejected a nationwide class action of individuals who allegedly suffered damages from implants of allegedly defective penal prostheses manufactured by the defendant. The federal court found that the class members had used at least ten different models of the prosthesis, and the legal claims would differ depending upon the model and the year it was issued.
The present case differs from In re American Medical Systems, Inc. in that the Norplant product is limited to one model implant so that the legal claims would not change depending upon the model or year it was issued. Further, the present case is not a nationwide class action but is limited to certain Louisiana females.
The federal court certified a class of users of nearly identical pacemakers manufactured by one company in In re Telectronics Pacing Systems, Inc., 172 F.R.D. 271, 288 (S.D.Ohio 1997). See Edward F. Sherman: Class Action Practice in the Gulf South, 74 Tul.L.Rev. 1603, 1611, n. 35 (June 2000). The above Tulane Law Review article stated that: "Most courts now hold that the need for individualized evidence *260 to establish the damages of each class member is not necessarily a bar to class certification. Some courts have also approved dividing up various liability issues to be tried in separate phases." Id. Separate phased trials have been referred to as "bifurcation or polyfurcatrion." An example was In re Bendectin Litigation, 857 F.2d 290, 293-94 (6th Cir.1988), cert. denied sub nom. Hoffman v. Merrell Dow Pharmaceuticals, Inc., 488 U.S. 1006, 109 S.Ct. 788, 102 L.Ed.2d 779 (1989), which approved the trifurcation of causation, liability, and damages in 844 cases that were consolidated. In that case, the plaintiffs sought damages for an allegedly defective antinausea drug. Id., 74 Tul. L.Rev. at 1612, n. 39.
In Ford, the Louisiana Supreme Court explained that in 1961, the Louisiana legislature enacted C.C.P. arts. 591-597 modeled after the original Federal Rule 23. In referring to Amchem Products, Inc. v. Windsor, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997), the Louisiana Supreme Court stated:
The [Amchem] Court did find that "mass tort cases arising from a common cause or disaster may, depending upon the circumstances, satisfy the predominance requirement." Id. The Court opined that although the comments to Rule 23 cautioned that mass tort cases were "ordinarily not appropriate for certification," "the text of the rule does not categorically exclude mass tort cases from class certification." Id.

Thus, it is clear that a mass tort case may meet the requirements of Rule 23(b)(3) if it "aris[es] from a common cause or disaster," but even then, the appropriateness of class certification will depend on the circumstances....
Ford, supra, 96-2913 p. 7, 703 So.2d at 549-550.
The present case differs from Ford in that a common defendant, Wyeth, and a common product, Norplant, exist. The present case allegedly arises from a common cause.
Wyeth argues that Ford requires that a number of bellwether trials should be held before class certification, so that, if the court decides to certify the class, it can articulate based on experience why the common issues predominate and a class action is a superior method for managing the litigation. Although Ford did not mention "bellwether" trials, it stated that: "... it is unproven whether trying the case as a class action would be superior to trying the case in several individual or consolidated actions." Id. at 551.
The plaintiffs argue that repetitious bellwether trials damage the principles of fairness and efficiency by producing liability determinations that may have precedence to parties not before the court. Bellwether trials present a risk of inconsistent adjudications. The plaintiffs refer to the imposition of delays and costs if the cases are tried individually. Louisiana courts are given vast discretion and may order a trial in phases of common issues and individual issues to alleviate the claims that a class action is unworkable. Adams, supra, 615 So.2d at 483. In the present case, the plaintiffs distinguish Ford, supra, noting that Ford was against certifying mass tort cases in which the source of the plaintiffs' alleged problems is not common and cannot be readily identified. The plaintiffs also assert that the bellwether trials held in Texas were tried under a theory of liability based on the manufacturer's failure to warn. The manufacturer prevailed by showing that the warnings were adequate.
In the present case, the plaintiffs allege damages from one source, the Norplant implant, which is designed in one form and *261 strength. The women received the same model, prescription strength, and dosage. The plaintiffs' theory of liability is based solely on defective design and not on a theory of failure to warn.
In Dumas v. Angus Chemical Co., supra, 635 So.2d at 452-453, the Second Circuit stated:
Denying class action and allowing individual suits to proceed, would create a significant risk of inconsistent judgments for the claims of many similarly situated plaintiffs. Inconsistent adjudications would send mixed messages to the defendants regarding the propriety of their conduct and the extent of the duty owed. In one case a defendant could be found liable, and exemplary damages awarded under LSA-C.C. Art. 2315.3. In a second case, the same defendant might be found liable, but no exemplary damages awarded. In yet a third case, the defendant might not be liable at all. Each of these findings would presumably be based upon the same facts and circumstances. Class action was designed to prevent these types of inconsistencies.
In the present case, Wyeth maintains that the plaintiffs provided a novel issue that requires bellwether trials prior to certification of the class. McCastle, supra, 456 So.2d at 621, reasoned that management difficulties could be remedied by the adoption of a case management plan. See Curtailing the Tidal Surge: Current Reforms in Louisiana Class Action Law, supra, 44 Loy.L.Rev. 7, 42-43.
In Class Action Practice in the Gulf South, 74 Tul.L.Rev. supra, at 1619, the writer concluded that: "The novel issues concern does not seem to have been critical in any class certification decision by a court and is usually just one of those additional factors that defendants hope will tip the balance against certification."
As noted in Stephen H. Kupperman and David G. Radlauer: Louisiana Class Actions, 74 Tul.L.Rev.2047, 2076, La. C.C.P. art. 593.1(C) was repealed by revisions in 1997. The Legislature expressed prohibitions against polyfurcation in La. C.C. P. art. 592(E)(5) effective in 1999. Castano, supra, 84 F.3d 734, 750, discussed the United States Constitution's Seventh Amendment implications involved in bifurcating issues and the parties' right to a jury trial.
With respect to bellwether trials, the above Tulane Law Review article stated:
Several Louisiana class actions have been tried through designation of "bellwether" plaintiffs who were selected by the parties. [fn 224: See, e.g., Adams v. Marathon Oil Co., 688 So.2d 75, 76 (La. Ct.App. 5th Cir.1997).].
* * *
In class actions, representatives effectively serve as bellwethers and they, unlike mere-party-selected bellwether plaintiffs, have the added benefit of court supervision and a judicial ruling that they are adequate representatives of the class with typical claims. Thus, no bellwether trials should be needed.
Id., 74 Tul.L.Rev.2047, 2085.
This Court upheld the certification of the class action in Atkins v. Harcross Chemicals, Inc., 638 So.2d 302 (La.App. 4 Cir.5/17/94), writs denied, 94-2158, 94-2161 (La.11/11/94), 644 So.2d 396, in which a class of individuals lived within a three block area of a warehouse where chemicals were stored. The plaintiffs claimed damages from 30 years of alleged toxic emissions. After certification, the case proceeded to the class notice phase, and the trial court entered a number of case management orders. The trial court directed a trial plan where "bellwether plaintiffs" *262 were selected by both the plaintiffs and defendants by virtue of their primary disease category. See Curtailing the Tidal Surge: Current Reforms in Louisiana Class Action Law, supra, 44 Loy.L.Rev. at 53.
In Rivera v. United Gas Pipeline Co., 96-502 (La.App. 5 Cir. 6/30/97), 697 So.2d 327, writs denied, 97-2030, 2031, 2032 & 2034 (La.12/12/97), 704 So.2d 1196 & 1197, the Louisiana Fifth Circuit affirmed certification of negligence class actions against a company and contractor, arising from the release of natural gas from a pipeline system. The class actions were consolidated on appeal. After certification of the class, the trial court ordered 24 of the class members to be selected to act as bellwether plaintiffs. The plaintiffs selected 12 and the defendants picked 12 bellwether plaintiffs. The Fifth Circuit affirmed the case management plan, noting that La. C.C.P. art. 593.1 "gives the trial judge wide latitude to `adopt a plan for the management of the class action litigation.' Other than this statute, there is very little Louisiana jurisprudence concerning the management of class actions." Id. 96-502, p. 15, 697 So.2d at 338.
Although the plaintiffs' claims may be novel in the present case, the alleged tortuous conduct arises out of a single defective product, and common issues as to liability predominate. The plaintiffs assert that it is desirable to concentrate the litigation in one forum or district, and the defendants have not raised any venue exceptions or objections.
The plaintiffs reason that the class members in this Norplant case can be identified by a clear means that does not require an expert. The individuals are identified by their medical records verifying that the device was implanted in their bodies, and by the scars on their arms.
It would be easier to determine what plaintiffs were exposed to the drug content in Norplant in the present case than it would be to ascertain when the nicotine-dependent plaintiffs smoked for medical monitoring in Scott, if and when the plaintiffs were exposed to toxic chemicals in Andry, or when the farmers' crawfish crops were exposed to the pesticide-treated rice seed in West. Because the plaintiffs had the Norplant contraceptive surgically inserted into their arms, exposure to the drug would be easily identifiable. There would be multiple defendants in the cigarette, toxic chemical, or pesticide class actions where there is only one defendant, Wyeth, with respect to the strict liability claims in the present case.
Bellwether, bifurcated or polyfurcated trials have been utilized to manage class actions after the courts have certified class actions. The trial court has much latitude in managing the trial phases in class action suits after certification of the class. The trial court did not abuse its discretion and was not manifestly wrong in finding that the class action would not present or create irreconcilable management difficulties in the present case.

Louisiana Law and Jurisprudence
Wyeth argues that the design defect cannot be a common issue for prescription drugs as a matter of Louisiana law. Wyeth asserts that no Louisiana court has certified a class in a pharmaceutical products liability case. Wyeth avers that federal courts have held that class certification is inappropriate in such cases because individual issues predominate over common ones.
A class action is the most effective way to efficiently and economically handle the Norplant complaints where there is a potential number of de minimis claims. See Scott, supra. A class action would allow access to the courts for claimants *263 who ordinarily might not be able to litigate. With the outcome having res judicata effect for many plaintiffs, a class action would save costs and streamline litigation. The plaintiffs claim that the defendant Wyeth's liability is caused by the singular act of selling a defective product where an alternative design would avoid the harm. Individual questions of quantum do not preclude a class action where the predominant liability issues are common to the class. The only practical vehicle that can effectively arrive at one consistent determination is the class action procedure.
We cannot say that the trial court abused its discretion or was manifestly wrong when it found that the plaintiffs carried their burden to demonstrate that the class action was a superior procedural device with respect to the plaintiffs' claims against Wyeth.
Accordingly, we affirm the trial court's judgment certifying and defining the class.
AFFIRMED.
NOTES
[1] Wyeth asserts that federal cases around the country were consolidated for pretrial proceedings in the Eastern District of Texas. In re Norplant Contraceptive Prods. Liab. Litig., MDL No. 1038. Two document depositories were established, with one located in Louisiana. Wyeth notes that the Louisiana facility is managed by a member of the Plaintiffs' Legal Committee in these three suits. The plaintiffs' counsel had access to the document depository and obtained copies of the depositions of all Wyeth employees.
[2] Acts 1997, No. 839 § 1 amended La. C.C.P. arts. 591 and 592 and repealed art. 591.1. The act applied to actions filed on or after its effective date of July 1, 1997.